EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Oriental Bank | Apelación |
|---|---|
| Recurrido | |
| v. | 2024 TSPR 133 |
| Víctor Pagán Acosta y otros | 215 DPR ___ |
| Peticionarios | |

Número del Caso: CC-2023-0831

Fecha: 16 de diciembre de 2024

Tribunal de Apelaciones:

    Panel XI

Representante legal de la parte peticionaria:

    Lcdo. Alexis Sánchez Morales

Representantes legales de la parte recurrida:

    Lcdo. Javier Montalvo Cintrón
    Lcdo. José M. Martínez Rivera

Materia: Sentencia con Opinión Disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oriental Bank

    Recurrido

        v.                     CC-2023-0831    *Certiorari*

Víctor Pagán Acosta y otros

    Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 16 de diciembre de 2024.

En el presente caso nos corresponde resolver si el Tribunal de Primera Instancia erró al denegar, -- y el Tribunal de Apelaciones en negarse a considerar --, cierta solicitud de relevo de sentencia presentada por la Sra. Magaly Ramos Miranda en el contexto de determinado litigio sobre cobro de dinero y ejecución de hipoteca. Este último instado en su contra por Oriental Bank.

Adelantamos que, luego de examinar el expediente que obra en autos, así como el derecho aplicable a la controversia planteada ante nos, concluimos que, en efecto, tanto el foro primario, como el foro apelativo intermedio, erraron en su proceder. Lo anterior, debido a que, como expondremos a continuación, la

*Sentencia* dictada contra la aquí peticionaria es nula y, por lo tanto, procedía relevar a esta última de la misma. Veamos.

I.

El caso de marras inició el 28 de septiembre de 2018 cuando Oriental Bank presentó ante el Tribunal de Primera Instancia una demanda en cobro de dinero y ejecución de hipoteca en contra del Sr. Víctor Pagán Acosta (en adelante, "señor Pagán Acosta"), la Sra. Magaly Ramos Miranda (en adelante, "señora Ramos Miranda") (en conjunto, "matrimonio Pagán-Ramos"), y la Sociedad Legal de Bienes Gananciales compuesta por ambos. En apretada síntesis, la referida institución bancaria alegó que era tenedora de un pagaré hipotecario por $40,700.00, al 3.50% de interés anual, suscrito por el matrimonio Pagán-Ramos, y que estos últimos habían otorgado una escritura de hipoteca sobre determinado bien inmueble ubicado en el pueblo de Hormigueros que fungía como garantía al referido pagaré.[1]

Oriental Bank adujo, además, que el matrimonio Pagán-Ramos había incumplido con el pago de las mensualidades debidas desde el 1 de abril de 2018. En consecuencia, declaró vencida la totalidad de la deuda, ascendente a $39,786.09 de principal, junto a otros cargos, y solicitó al foro primario

---

[1] Según surge de la *Demanda* el inmueble hipotecado fue descrito de la siguiente manera: "URBANA: Solar marcado con el número 11 del Bloque SQ en la Urbanización Valle Hermoso radicado en el Barrio Guanajibo del municipio de Hormigueros, con una cabida: 305.75 metros cuadrados, en colindancias, por el Norte, en 12.12 metros y 36 centímetros, con el solar número 3; por el Sur, en 12.48 metros, con la Calle número 42; por el Este, en 24.45 metros, con el solar número 10; y por el Oeste, en 24.50 metros, con el solar número 12. Contiene una casa de concreto, tipo Mallorca, que consta de sala, comedor, tres dormitorios, baño, porch y marquesina. Finca 1779 inscrita al sistema Karibe Registro de la Propiedad de Mayagüez". Véase, *Apéndice del certiorari*, pág. 31.

que ordenara a estos últimos al pago de lo debido o, en la alternativa, que se ordenara al Alguacil del Tribunal a proceder con la venta en pública subasta de la propiedad en cuestión.

Así las cosas, y sin haber contestado la demanda a la que hemos hecho referencia, el 17 de diciembre de 2018 el matrimonio Pagán-Ramos presentó ante la Corte de Quiebras de los Estados Unidos de América una petición de quiebra (Caso Núm. 18-07338-EAG13), la cual tuvo el efecto de paralizar el caso civil sobre cobro de dinero y ejecución de hipoteca instado ante el Tribunal de Primera Instancia.[2] **Estando vigente la referida orden de paralización, el 27 de junio de 2021 falleció el señor Pagán Acosta.**

Meses más tarde, el 29 de octubre de 2021 para ser específicos, Oriental Bank compareció ante el foro primario mediante una *Moción de continuación de los procedimientos y solicitud de anotación de rebeldía*. En dicho escrito, la referida institución bancaria sostuvo que la Corte de Quiebras había autorizado el levantamiento de la paralización del caso civil sobre cobro de dinero y ejecución de hipoteca instado ante el Tribunal de Primera Instancia. Por consiguiente, solicitó al foro primario la continuación de los procedimientos relacionados con el mismo.

---

[2] Tras advenir en conocimiento de la existencia del proceso de quiebra, el 8 de enero de 2019 el Tribunal de Primera Instancia emitió una *Sentencia* mediante la cual paralizó los procedimientos en el caso civil de cobro de dinero y ejecución de hipoteca. Además, el foro primario se reservó la jurisdicción para decretar, a solicitud de parte interesada, la reapertura del aludido caso civil una vez quedara sin efecto la orden de paralización emitida por la Corte de Quiebras.

En la referida moción, Oriental Bank también presentó, por vez primera, la evidencia del diligenciamiento de los emplazamientos al matrimonio Pagán-Ramos, -- por sí y en representación de la Sociedad Legal de Gananciales compuesta por ambos --, efectuados los días 16 de octubre y 21 de noviembre de 2018, y, por entender que estos, a pesar de ser emplazados, no habían realizado una alegación responsiva dentro del término provisto por las Reglas de Procedimiento Civil, *infra*, solicitó al Tribunal de Primera Instancia que, conforme a la Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, le anotara la rebeldía al matrimonio aquí demandado. Adicionalmente, la referida institución bancaria peticionó al foro primario que dictara sentencia en rebeldía a su favor al amparo de la Regla 45.2(b) de las de Procedimiento Civil, 32 LPRA Ap. V.

No habiéndose expresado el Tribunal de Primera Instancia sobre lo solicitado, el 21 de marzo de 2022 Oriental Bank compareció nuevamente ante el foro primario a través de otra *Moción de continuación de los procedimientos y solicitud de anotación de rebeldía y sentencia*. En dicho escrito, la referida institución bancaria solicitó, nuevamente, los mismos remedios que había peticionado en su comparecencia del 29 de octubre de 2021.

En respuesta a lo anterior, el 26 de mayo de 2022 el Tribunal de Primera Instancia emitió una *Orden* mediante la cual, en el mismo acto, ordenó la continuación de los procedimientos en el caso civil que aquí nos compete y anotó

la rebeldía al matrimonio Pagán-Ramos. Dicha orden fue oportunamente notificada a todas las partes con interés en el litigio.

Enterado de ello, el 4 de agosto de 2022 Oriental Bank acudió nuevamente ante el foro primario y reiteró su solicitud de que se dictase sentencia en rebeldía a su favor. Examinado dicho pedido, el 15 de agosto de 2022 el Tribunal de Primera Instancia notificó una *Sentencia* mediante la cual acogió lo solicitado por la referida institución bancaria.

Así las cosas, el 15 de septiembre de 2022 Oriental Bank presentó ante el foro primario una *Moción de ejecución de sentencia* solicitando a través de ella la expedición del correspondiente mandamiento para llevar a cabo la venta en pública subasta de la propiedad objeto del presente litigio. Dicho mandamiento de ejecución fue expedido por el Tribunal de Primera Instancia el 5 de octubre de 2022.

Posteriormente, el 17 de mayo de 2023 para ser exactos, se celebró la venta en pública subasta de la propiedad a la que hemos hecho referencia, la cual fue adjudicada a Oriental Bank. En virtud de ello, y luego de así haberlo solicitado, el 22 de mayo de 2023 el foro primario emitió una *Orden de mandamiento de lanzamiento* y una *Orden de confirmación de adjudicación o venta judicial.*

Como consecuencia de lo anterior, durante el mes de junio de 2023, la señora Ramos Miranda recibió la visita de un alguacil del tribunal, quien acudió a su hogar con el propósito de ejecutar la orden de lanzamiento emitida por el

Tribunal de Primera Instancia. En ese momento, y tras advenir en conocimiento de la *Sentencia* y *Orden* que pesaban en contra de su propiedad, esta última acudió en búsqueda de representación legal.

Tras las gestiones realizadas, el 29 de junio de 2023 la señora Ramos Miranda compareció ante el foro primario representada por la Corporación de Servicios Legales de Puerto Rico, Inc., y presentó una *Urgente moción asumiendo representación legal y solicitando paralización de lanzamiento*. En dicho escrito, la referida entidad solicitó al Tribunal de Primera Instancia que se le aceptara como representante legal de la señora Ramos Miranda y, además, que se paralizara temporeramente la orden de lanzamiento expedida en contra de ésta última en lo que examinaba el expediente del caso. Asimismo, la representación legal de la señora Ramos Miranda destacó la sensibilidad que se amerita al atender un caso como el de autos, en el que una persona de edad avanzada se encuentra en riesgo real de perder su residencia.

Posteriormente, -- y luego del foro primario haber concedido a la señora Ramos Miranda un término de cinco (5) días para fundamentar en derecho su solicitud de paralización --, el 17 de julio de 2023 el Tribunal de Primera Instancia emitió una *Resolución* mediante la cual declaró "no ha lugar" la aludida solicitud de paralización del lanzamiento. Lo anterior, por haber transcurrido el término de tiempo concedido a esta para que fundamentara su solicitud, sin que así lo hiciera.

Insatisfecha con dicha determinación, el 17 de agosto de 2023 la señora Ramos Miranda acudió nuevamente ante el foro primario mediante una *Solicitud de relevo de sentencia y nulidad de subasta pública por falta de parte indispensable e incumplimiento con el deber jurisdiccional de citar a las partes a mediación compulsoria*. **En ésta expuso, entre otras cosas, que la *Sentencia* dictada en su contra era nula por haber ausencia de parte indispensable. Ello así, debido a que, a pesar de la muerte del señor Pagán Acosta (su esposo) durante la paralización del caso civil, Oriental Bank no había solicitado la correspondiente sustitución de parte.**

**De otra parte, la señora Ramos Miranda también sostuvo que el Tribunal de Primera Instancia había dictado sentencia sin jurisdicción sobre la materia. Esto, toda vez que el matrimonio demandado no fue citado al proceso de mediación compulsoria entre acreedor y deudor hipotecario que exige la Ley Núm. 184 del 2012, mejor conocida como la *Ley para mediación compulsoria y preservación de tu hogar en los procesos de ejecuciones de hipotecas de una vivienda principal*. 32 LPRA sec. 2881 *et seq.***

Por su parte, el 21 de agosto de 2023 Oriental Bank compareció ante el foro primario mediante una *Oposición a moción de relevo de sentencia*. En ésta, sostuvo que lo solicitado por la parte demandada era improcedente en derecho por diversas razones. Entre estas, la referida institución bancaria destacó el hecho de que no tuvo forma de conocer sobre la muerte del señor Pagán Acosta para la correspondiente

sustitución de parte; que el requisito de mediación compulsoria exigido por la Ley Núm. 184 de 2012, *supra*, no aplicaba al caso de autos por haberse anotado la rebeldía; y que el término de seis (6) meses dispuesto en las Reglas de Procedimiento Civil para solicitar el relevo de sentencia ya había transcurrido al momento de realizar tal pedido.

Evaluados los planteamientos de ambas partes, el 24 de agosto de 2023 el Tribunal de Primera Instancia notificó una *Resolución* mediante la cual declaró sin lugar la solicitud de relevo de sentencia presentada por la señora Ramos Miranda. En su dictamen, el foro primario acogió los argumentos presentados por Oriental Bank en su *Oposición*.

Inconforme con dicha determinación, el 22 de septiembre de 2023 la señora Ramos Miranda compareció ante el Tribunal de Apelaciones mediante un recurso de *certiorari*. En el referido escrito, ésta señaló como errores del foro primario el haberse negado a expedir el relevo de sentencia solicitado a pesar de que (1) la anotación de rebeldía en su contra fue contraria a derecho; (2) existía ausencia de parte indispensable al momento de dictarse sentencia; y (3) la sentencia era nula por haber sido dictada sin jurisdicción al no cumplirse con los requisitos dispuestos en la Ley Núm. 184-2012, *supra*. A dicha solicitud, y bajo fundamentos similares a los expuestos ante el Tribunal de Primera Instancia, se opuso Oriental Bank.

Examinados los alegatos de ambas partes, el 24 de octubre de 2023 el Tribunal de Apelaciones emitió una *Resolución*

mediante la cual rehusó expedir el recurso de *certiorari* presentado por la señora Ramos Miranda. En esencia, el foro apelativo intermedio razonó que la parte demandada fue emplazada conforme a derecho, mas no compareció a hacer su alegación responsiva. Por tanto, a juicio del Tribunal de Apelaciones, procedía la sentencia en rebeldía dictada y, en ausencia de prejuicio, parcialidad o error manifiesto, no existían fundamentos que justificaran la expedición del auto.

Aún insatisfecha, y luego de presentar una solicitud de *Reconsideración* que fuese denegada por el foro apelativo intermedio, el 27 de diciembre de 2023 la señora Ramos Miranda acudió ante nos mediante un recurso de *certiorari*. En síntesis, en el referido recurso, ésta reitera los señalamientos de errores levantados ante el Tribunal de Apelaciones y nos insta a que expidamos el recurso y revoquemos la denegatoria del Tribunal de Primera Instancia ante la solicitud de relevo de sentencia.

Por su parte, el 24 de julio de 2024 Oriental Bank compareció ante nos mediante un *Alegato en oposición.* En éste y a grandes rasgos, la referida institución bancaria reiteró lo que a su juicio constituye la improcedencia del recurso instado por la señora Ramos Miranda. Lo anterior debido a que, entre otras razones, la solicitud de relevo de sentencia aquí en controversia fue presentada fuera del término reglamentario de seis (6) meses y a que la reclamación de ausencia de parte indispensable está afectada por un proceder incurioso de parte de la señora Ramos Miranda.

Expedido el auto en reconsideración y contando con la comparecencia de ambas partes, estamos preparados para resolver y así lo haremos, no sin antes repasar el derecho aplicable a la controversia ante nuestra consideración.

II.

Como es sabido, en nuestro ordenamiento jurídico toda sentencia dictada por un tribunal de justicia goza de la presunción de que la misma es válida y correcta. *Olmeda Nazario v. Sueiro Jiménez*, 123 DPR 294 (1989); *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445 (1977); *Cortés Piñeiro v. Sucn. A. Cortés*, 83 DPR 685, 690 (1961). Empero, existen circunstancias particulares en las que "nuestro ordenamiento procesal civil permite a una parte solicitar el relevo de los efectos de una sentencia previamente dictada en su contra". *López García v. López García*, 200 DPR 50, 59 (2018). Estas peculiares circunstancias son las que abarca, precisamente, la Regla 49.2 de las de Procedimiento Civil. R. 49.2, 32 LPRA Ap. V.

Sobre el particular, la referida disposición reglamentaria establece lo siguiente:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también

llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

(d)   nulidad de la sentencia;

(e)   la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f)   cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

[…] La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:

(1)   conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2)   conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal. R. 49.2, 32 LPRA Ap. V.

Así pues, lo dispuesto en la precitada regla constituye "el mecanismo que tiene disponible una parte que interese solicitar al foro de instancia el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos". *López García v. López García*, *supra*, pág. 60; véase, además, *García Colón et al. v. Sucn. González*, 178 DPR 527, 539 (2010). Dicho mecanismo, cumple el rol dual de adelantar el interés de que los casos se resuelvan en sus méritos y, por otro lado, promover la finalización de los

pleitos. Véanse, *García Colón et al. v. Sucn. González*, *supra*, pág. 540; *Náter v. Ramos*, 162 DPR 616, 624 (2004).

De otra parte, y como regla general, la Regla 49.2 de Procedimiento Civil, *supra*, establece que la moción solicitando el relevo de una sentencia deberá presentarse dentro de un término razonable, pero nunca después de haber transcurrido seis (6) meses del registro de la sentencia. *Íd.* **Sin embargo, es norma conocida que si el fundamento para solicitar el relevo de la sentencia se basa en la nulidad de la misma, el término de los seis (6) meses es inaplicable y el tribunal vendrá obligado a relevarla.** *HRS Erase v. CMT*, 205 DPR 689, 699 (2020); *Montañez v. Policía de Puerto Rico*, 150 DPR 917, 922 (2000); *Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 DPR 237, 244 (1996). Ello es así debido a que cuando una moción al amparo de la Regla 49.2 de Procedimiento Civil, *supra*, se basa en la nulidad de una sentencia y dicha nulidad queda probada, el tribunal queda sin discreción para rechazar la solicitud de relevo y viene obligado a acatarla. *HRS Erase v. CMT*, *supra*, pág. 698; *López García v. López García*, *supra*, pág. 61; *Rivera v. Algarín*, 159 DPR 482, 490 (2003).

Así, por ejemplo, ante una sentencia dictada sin jurisdicción sobre la persona o sobre la materia, el tribunal se encuentra ante una sentencia nula y, por consiguiente, vendría obligado a relevarla ya sea, a solicitud de parte o a instancia propia. *HRS Erase v. CMT*, *supra*, págs. 698-699; *López García v. López García*, *supra*, pág. 62. Véase, además,

R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, San Juan, Lexis Nexis, págs. 456-457, Sec. 4807.

**De igual forma, hemos sentenciado que similar proceder vienen llamados a seguir los tribunales, -- entiéndase, a relevar de una sentencia --, cuando se trata de un dictamen que ha quebrantado el debido proceso de ley de una parte, como lo sería una sentencia dictada sin haberse acumulado una parte indispensable.** *Rivera Torres v. Díaz López*, 207 DPR 636, 657 (2021); *HRS Erase v. CMT*, *supra*, pág. 699; *García Colón v. Sucn. González*, *supra*, págs. 543-544, 551.

A raíz del análisis que antecede, pasemos ahora a discutir la figura de parte indispensable en el litigio civil puertorriqueño.

III.

En esa dirección, la Regla 16.1 de las de Procedimiento Civil establece que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse [una] controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". R. 16.1, 32 LPRA Ap. V. Ello es lo que se conoce como parte indispensable.

Este precepto, entiéndanse el de parte indispensable, forma parte del principio constitucional que postula que "ninguna persona será privada de su libertad o propiedad sin [un] debido proceso de ley". Art. II, Sec.7, Const. ELA, LPRA, Tomo 1, Ed. 2023, pág. 305. Véanse además, *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743, 756 (2003); *Infante*

*v. Maeso*, 165 DPR 474, 490 (2005). De igual manera, la Regla 16.1 de Procedimiento Civil, *supra*, también encarna otro principio fundamental, a saber: la necesidad de incluir a una parte con interés para que el decreto judicial emitido sea completo. *López García v. López García*, *supra*, pág. 64; *Cepeda Torres v. García Ortiz*, 132 DPR 698, 704 (1993).

Sobre el interés común al que se hace referencia en la regla procesal bajo estudio, este Tribunal ha sentenciado que el mismo debe ser uno real e inmediato y que no basta con que sea un interés especulativo ni futuro. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 389-390 (2020); *López García v. López García*, *supra*, pág. 64; *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007). Es decir, debe tratarse "de un interés de tal orden que impida la confección de un derecho adecuado sin afectar o destruir radicalmente los derechos de esa parte" que, por consiguiente, es llamada indispensable. *López García v. López García*, *supra*, pág. 64.

Así pues, estando en juego intereses de tal envergadura, al momento de interpretar la referida Regla 16.1 de Procedimiento Civil, *supra*, los tribunales de justicia venimos llamados a emplear un enfoque pragmático en el que evaluemos, juiciosamente, las singularidades de cada caso y los derechos de las partes que no están presentes en el pleito y que podrían verse afectados. *López García v. López García*, *supra*, págs. 64-65; *Romero v. S.L.G. Reyes*, 164 DPR 721, 732-733 (2005). Véase, además, J.A. Cuevas Segarra, *Tratado de*

*derecho procesal civil*, 2da ed., Estados Unidos, Pubs. JTS, 2011, T. IV, págs. 1415-1418.

**Por último, y sobre el alcance de lo dispuesto en la Regla 16.1 de Procedimiento Civil,** *supra*, **hemos expresado que "la falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso", e, incluso, los foros apelativos pueden, y deben,** *motu proprio*, **levantarla.** (Énfasis suplido). *López García v. López García*, *supra*, pág. 65. **Y es que, tal y como hemos sentenciado en otras ocasiones, la sentencia dictada en ausencia de un parte indispensable es nula por cuanto priva al tribunal de jurisdicción sobre la persona sobre la cual se pretende hacer valer un dictamen.** *García Colón v. Sucn. González*, *supra*, pág. 550. Véase, además, *Unisys v. Ramallo Brothers,* 128 DPR 842, 859 (1991).

Establecido lo anterior, y por su particular importancia para la correcta disposición de los asuntos ante nuestra consideración, pasamos ahora a examinar aquello atinente a los mecanismos de sustitución de partes que contempla nuestro ordenamiento procesal civil.

IV.

Sabido es que, en nuestro ordenamiento jurídico, todo lo relacionado a la sustitución de partes en un litigio civil está regulado por la dispuesto en la Regla 22 de las de Procedimiento Civil. R. 22, 32 LPRA Ap. V. En específico, la Regla 22.1 contiene el proceso a seguirse a la hora de

sustituir a una parte cuando ésta ha fallecido y la reclamación, -- instada por sí o en contra suya --, no ha quedado extinguida. R. 22.1, 32 LPRA Ap. V.

A esos efectos, la referida regla dispone que,

(a)   …

(b)   **Si una parte fallece y la reclamación no queda por ello extinguida, cualquiera de las partes en el procedimiento o sus abogados o abogadas notificarán el fallecimiento al tribunal y a las otras partes dentro del término de treinta (30) días, contados desde la fecha cuando se conozca tal hecho.** El tribunal, a solicitud hecha dentro de los noventa (90) días siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas. Los y las causahabientes o representantes podrán presentar la solicitud de sustitución del finado o de la finada, y dicha solicitud se notificará a las partes en la forma dispuesta en la Regla 67 y a las que no lo sean en la forma que dispone la Regla 4. La demanda se enmendará a los únicos fines de conformar la sustitución e incorporar las nuevas partes al pleito. **Transcurrido el término sin que se haya solicitado la sustitución, se dictará sentencia para desestimar el pleito sin perjuicio.**

(c) De fallecer una o más partes demandantes, o uno o más partes demandadas, que fueron partes en un pleito en que el derecho reclamado subsista sólo a favor de las demandantes o contra las partes demandadas que sobrevivan, el pleito no finalizará. Se notificará al tribunal el hecho de la muerte y el pleito continuará a favor o contra las partes sobrevivientes. (Énfasis suplido). R.22.1, 32 LPRA Ap. V.

Es decir, de conformidad con la Regla 22.1 de Procedimiento Civil, *supra*, al fallecer alguna parte durante la tramitación de un caso civil, existe un término preciso de tiempo en el que debe realizarse la sustitución correspondiente. Cabe señalar que, como bien expresa la precitada regla, la notificación del deceso de la parte en cuestión puede ser realizada por cualquiera de las partes o

sus abogados o abogadas dentro de los treinta (30) días contados desde la fecha en que se conoció de tal hecho. Una vez notificado el aludido fallecimiento, las partes tendrán noventa (90) días para solicitar al tribunal la sustitución de parte que corresponda.

De la parte fallecida no ser oportunamente sustituida, el propio texto de la Regla 22.1, *supra*, establece que el pleito no podrá continuarse y corresponderá al tribunal dictar una sentencia desestimatoria sin perjuicio. Tal es el caso de autos.

Recordemos, además, que al momento de sustituir una parte por otra que no está en el pleito, "será necesario adquirir jurisdicción *in personam* sobre esta nueva parte", lo que se logra a través de su emplazamiento. *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 DPR 664, 686 (1989). De esta forma, sustituida la parte fallecida, y habiendo sido emplazados los sustitutos, éstos quedan "en los mismos zapatos que la parte sustituida", por lo que sus derechos no se ven afectados. *Ruiz Mattei v. Commercial Equipment Finance, Inc.*, 2024 TSPR 68; *Echevarría Jiménez v. Sucn. Pérez Meri*, *supra*, pág. 685.

Examinada, pues, la normativa aplicable a la controversia ante nuestra consideración, pasemos pues a disponer de la misma.

V.

En el presente caso, como ya hemos reseñado, la señora Ramos Miranda nos solicita que revisemos la determinación emitida por el Tribunal de Primera Instancia mediante la cual

declaró sin lugar una solicitud de relevo de sentencia bajo la Regla 49.2 de Procedimiento Civil, *supra*. En esencia, ésta arguye que la *Sentencia* dictada en el caso civil por cobro de dinero y ejecución de hipoteca instado por Oriental Bank en contra de ella, su fenecido esposo y la Sociedad Legal de Bienes Gananciales entonces compuesta por ambos, es nula por, entre otras razones, haber sido dictada sin haberse acumulado ciertas partes indispensables, como consecuencia de la muerte del señor Pagán Acosta. Le asiste la razón.

Y es que, como hemos podido apreciar, en lo relacionado a la causa de epígrafe, lo cierto es que antes de que el Tribunal de Primera Instancia dictara la *Sentencia* aquí en controversia el señor Pagán Acosta había fallecido y, por tanto, la Sociedad Legal de Bienes Gananciales compuesta por éste y la señora Ramos Miranda había dejado de existir. En consecuencia, y según ordena la Regla 22.1 de las de Procedimiento Civil, *supra*, para continuar con el proceso de ejecución de hipoteca era necesario que se realizara la correspondiente sustitución de parte. **Ello no se hizo aquí.**

No olvidemos que, al fallecer el señor Pagán Acosta, los herederos de éste se convirtieron en partes indispensables que era necesario acumular en el caso ante nuestra consideración. Lo anterior, por haber adquirido un interés común y sustancial en el inmueble objeto de ejecución.

Así pues, una vez Oriental Bank advino en conocimiento del fallecimiento del señor Pagán Acosta era su deber procurar la correspondiente sustitución de parte para incluir como

tales a los herederos del referido causante que hubiesen aceptado el llamado a heredar. Al no haberlo hecho, la *Sentencia* dictada por el Tribunal de Primera Instancia en el presente caso es nula por ausencia de parte indispensable. Véase, *López García v. López García*, *supra*, pág. 66; *García Colón v. Sucn. González*, *supra*, pág. 551. Se cometió, pues, el error señalado.[3]

VI.

Por los fundamentos ante expuestos, se revocan las determinaciones de los foros inferiores. En consecuencia, se releva la *Sentencia* emitida por el Tribunal de Primera Instancia y se devuelve el caso para la continuación de los procedimientos cónsono con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió una Opinión disidente. El Juez Asociado señor Rivera García no intervino.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

---

[3] Sobre el señalamiento hecho por la señora Ramos Miranda a los efectos de que la *Sentencia* dictada es nula por no haberse cumplido con el requisito jurisdiccional de citación a mediación compulsoria que impone la Ley Núm. 184-2012, 32 LPRA sec. 2881 *et seq.*, basta con decir que el mismo es improcedente pues la ley vigente al momento de la interposición de la demanda (año 2018) solo contemplaba el deber de citar a mediación compulsoria por parte del Tribunal tras los demandados haber contestado la demanda. Véase, *Bco. Santander v. Correa García*, 196 DPR 452 (2016). Sin embargo, en el presente caso el matrimonio demandado no contestó la demanda, por lo tanto, el foro primario no venía obligado a citar a las partes a mediación conforme lo exige la precitada legislación.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oriental Bank<br><br>    Recurrido<br><br>        v.<br><br>Víctor Pagán Acosta y otros<br><br>    Peticionarios | CC-2023-0831 | |

Opinión disidente emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 16 de diciembre de 2024.

Es harto conocido en nuestro ordenamiento jurídico que el mecanismo de relevo de sentencia contemplado en nuestras Reglas de Procedimiento Civil no puede ser utilizado de manera caprichosa para reabrir casos válidamente adjudicados. Sin embargo, una Mayoría de este Tribunal opta por dejar a un lado esta normativa con el fin de concederle ese remedio a una parte que desplegó total indiferencia y desidia durante la tramitación del presente caso.

Según el criterio mayoritario, el recurrido —como acreedor demandante y sin conocimiento del fallecimiento del codemandado— era quien tenía el deber de solicitar que este último fuese sustituido por sus herederos en el pleito. Al no haberlo hecho, este Tribunal concluye que la *Sentencia* final y firme impugnada es nula, por haberse dictado en ausencia de parte indispensable. Empero, me veo

obligada a preguntar: ¿cómo debía el demandante tomar acción sobre un acontecimiento que nunca fue revelado por la codemandada hasta meses luego de que advino final y firme el dictamen revisado?

La codemandada era quien único conocía del fallecimiento de su esposo al momento en que el foro primario emitió la *Sentencia* final. Por tanto, era esta quien tenía el deber de notificar el referido acontecimiento al tribunal para que se efectuara la debida sustitución de parte **y no lo hizo.** En ese aspecto, concederle el remedio de relevo de sentencia a la parte que provocó la causa que fundamenta la petición en cuestión resulta un proceder errado, injusto e irrazonable por parte de este Foro.

En vista de lo anterior, considero que los tribunales inferiores no erraron al negarse a intervenir con la decisión recurrida. No obstante, habiéndose asumido una postura distinta por una Mayoría de este Tribunal, **disiento.**

Veamos los hechos del caso.

# I

El 28 de septiembre de 2018, Oriental Bank (Oriental o recurrido) presentó una *Demanda* sobre cobro de dinero y ejecución de hipoteca en contra del Sr. Víctor Pagán Acosta (señor Pagán Acosta), la Sra. Magaly Ramos Miranda (señora Ramos Miranda o peticionaria) y la Sociedad Legal de Bienes

Ganaciales compuesta por ambos (en conjunto, demandados o matrimonio Pagán-Ramos).[1]

Surge de autos que el **16 de octubre de 2018** y el **21 de noviembre de 2018, Oriental diligenció los emplazamientos a la señora Ramos Miranda y al señor Pagán Acosta,** respectivamente.

**El 20 de diciembre de 2018, <u>Oriental</u> presentó una** *Moción de Paralización de los Procedimientos*. Informó que había advenido en conocimiento de que el 17 de diciembre de 2018 los demandados radicaron una petición al amparo del Capítulo 13 del Código de Quiebras (Caso Núm. 18-07338-EAG13).

En consecuencia, el 4 de enero de 2019, el Tribunal de Primera Instancia emitió una *Sentencia*, notificada el 8 del mismo mes y año, mediante la cual paralizó los procedimientos y se reservó jurisdicción para reabrirlo a solicitud de parte interesada una vez culminara el proceso federal.

**El 29 de octubre de 2021, <u>Oriental</u> presentó una** *Moción de Continuaci[ó]n de los Procedimientos y Solicitud de*

---

[1] En síntesis, Oriental Bank (Oriental) alegó que: (1) era tenedora de un pagaré hipotecario por la cantidad $40,700.00, el cual fue suscrito por el Sr. Víctor Pagán Acosta (señor Pagán Acosta) y la Sra. Magaly Ramos Miranda (señora Ramos Miranda) (en conjunto, matrimonio Pagán-Ramos o demandados) el 30 de diciembre de 2016; (2) que, en esa misma fecha, los demandados también otorgaron la Escritura de Primera Hipoteca [Núm.] 136, la cual consta inscrita en el Registro de la Propiedad desde el 14 de junio de 2018; y (3) que el matrimonio Pagán-Ramos incurrió en incumplimiento del acuerdo pactado al no pagar las mensualidades vencidas a partir del 1 de abril de 2018. En vista de lo anterior, solicitó el pago de lo debido o, en la alternativa, la venta en pública subasta de la propiedad hipotecada. Indicó que, de no ser suficiente lo anterior para cubrir la suma adeudada, interesaba la ejecución de la *Sentencia* que en su día se dictase sobre cualesquiera otros bienes que tuviesen los demandados.

*Anotación de Rebeldía y Sentencia*. Informó que la Corte de Quiebras había autorizado el levantamiento de la paralización a su favor, por lo que solicitaba la continuación del caso.[2] Añadió, además, que el matrimonio Pagán-Ramos había sido debidamente emplazado y que, sin embargo, no había comparecido a presentar alegación responsiva alguna. Por lo cual, solicitó al foro primario que anotara la rebeldía y procediera a dictar *Sentencia* conforme a derecho.

No habiéndose tomado acción sobre su petitorio, **y sin contar aún con la comparecencia de los demandados**, el 21 de marzo de 2022 Oriental procedió a reiterar nuevamente su solicitud para que continuaran los procedimientos y se anotara la rebeldía al matrimonio Pagán-Ramos.

Así las cosas, el 18 de mayo de 2022 el Tribunal de Primera Instancia emitió una *Orden*, notificada el 26 de mayo de 2022, mediante la cual dejó sin efecto la paralización, ordenó la continuación de los procedimientos y les anotó la rebeldía a los demandados. Por su parte, el 4 de agosto de 2022, Oriental reiteró su solicitud para que el tribunal dictase sentencia en rebeldía y adjuntó un proyecto de sentencia a esos efectos.

En consecuencia, el 9 de agosto de 2022, el foro primario emitió una *Sentencia*, notificada el 15 de agosto

---

[2] Surge del *Docket* del Caso Núm. 18-07338-EAG13 que el 29 de noviembre de 2021 la Corte de Quiebras desestimó el pleito. Esto, en respuesta al "Trustee's motion to dismiss case for failure to make payments with Declaration Under Servicemember Civil Relief Act of 2003". Véase, Entradas Núm. 97 y Núm. 98 del *Docket* del Caso Núm. 18-07338-EAG13.

de 2022, mediante la cual declaró Con Lugar la *Demanda*, ordenó la ejecución de la hipoteca e instruyó que se procediera a vender el bien inmueble objeto de esta en pública subasta.[3]

**Los demandados no recurrieron de la *Sentencia* dictada por el Tribunal de Primera Instancia, por lo que la misma advino final y firme**. En vista de ello, el 15 de septiembre de 2022, Oriental presentó una *Moción de Ejecución de Sentencia*. En respuesta, el 5 de octubre de 2022, el foro primario emitió y notificó un *Mandamiento,* dirigido al alguacil del tribunal, para que se procediera a efectuar la venta en pública subasta del inmueble en controversia.

El 18 de mayo de 2023, Oriental presentó una *Moción Solicitando [sic.] Orden de Lanzamiento*. Informó que fue el licitador victorioso en la subasta celebrada y que, por tanto, solicitaba el desalojo de los ocupantes de la propiedad y que se le entregara a este la posesión de misma.

A su vez, ese mismo día, Oriental interpuso una *Moción Solicitando [sic.] Orden de Confirmación de Adjudicación*, por medio de la cual peticionó al Tribunal de Primera Instancia que confirmara la adjudicación de la subasta, de modo que pudiera lograr acceso al Registro de la Propiedad.

---

[3] Esto, con el fin de satisfacer la cuantía adeudada de $39,786.09 de principal, $657.70 en intereses, los cuales se acumulaban a un 3.50% anual desde el 1 de marzo de 2018, $207.10 de "escrow balance", $23.08 de cargos por atrasos, $52.00 de otros cargos, $4,070.00 de costas, gastos y honorarios de abogado, más cualquier otro desembolso que hubiese efectuado Oriental durante la tramitación del caso de conformidad con el Contrato Hipotecario, incluyendo prima de seguro de hipoteca, prima de seguro de siniestro y cargos por demora.

El 22 de mayo de 2023, el foro primario emitió y notificó una *Orden* mediante la cual declaró Con Lugar la petición de lanzamiento y emitió un *Mandamiento* a esos fines. En igual fecha, también emitió y notificó una *Orden de Confirmación de Adjudicación o Venta Judicial*, según solicitó el recurrido.

**El 29 de junio de 2023 —<u>a casi un año de haberse emitido la *Sentencia* que puso fin al reclamo en cobro de dinero y ejecución de hipoteca</u>— la señora Ramos Miranda, presentó en el Tribunal de Primera Instancia una *Urgente Moción Asumiendo Representación Legal y Solicitando Paralización de Lanzamiento*.** En su escrito, esbozó, en lo pertinente, que: (1) la propiedad ejecutada era su residencia principal; (2) que era una persona de edad avanzada, **y (3) que el señor Pagán Acosta había fallecido previo a anotarse la rebeldía y a que el tribunal emitiera *Sentencia* en este caso.**[4]

Tras varios trámites, el 17 de julio de 2023 el foro primario emitió y notificó una *Resolución* mediante la cual denegó la solicitud de paralización de la señora Ramos Miranda.

Así las cosas, **el 17 de agosto de 2023, —<u>luego de un (1) año de dictada y notificada la Sentencia final y firme</u>— la señora Ramos Miranda instó una *Solicitud de Relevo de Sentencia y Nulidad de Subasta P[ú]blica por***

---

[4] Se desprende de autos que el señor Pagán Acosta falleció el 27 de junio de 2021.

*Falta de Parte Indispensable e Incumplimiento con el Deber Jurisdiccional de Citar a las Partes a Mediaci[ó]n Compulsoria*. En esencia, planteó que: (1) no procedía la anotación de rebeldía debido a que el matrimonio Pagán-Ramos instó una Petición de Quiebra cuando aún tenían cuatro días para contestar la *Demanda*, por lo que al ordenarse la continuación de los procedimientos se les debió brindar oportunidad para presentar su alegación responsiva; (2) que el foro primario incumplió con el requisito jurisdiccional impuesto por la Ley Núm. 184-2012, según enmendada, conocida como *Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, 32 LPRA sec. 2881 *et seq.* (Ley Núm. 184-2012), al no referir el caso al proceso de mediación compulsoria y, por último, (3) que a pesar de que el señor Pagán Acosta falleció cuando los procedimientos estaban paralizados, y previo a dictarse *Sentencia*, Oriental nunca sustituyó a la sucesión del fallecido como parte en el pleito, por lo que la *Sentencia* era nula al haberse omitido una parte indispensable.[5] Ese mismo día, la señora Ramos Miranda presentó, además, otra *Moci[ó]n de Paralizaci[ó]n de Lanzamiento*.

Por su parte, el 21 de agosto de 2023, Oriental presentó su *Oposición a Moción de Relevo de Sentencia*. En

---

[5] Contrario al argumento de la señora Ramos Miranda, la paralización a favor de Oriental fue levantada el 12 de enero de 2021. Por lo que al fallecer el señor Pagán Acosta el 27 de junio de 2021, ya el presente proceso en cobro de dinero y ejecución de hipoteca podía continuar. Véase, Entrada Núm. 91 del *Docket* del Caso Núm. 18-07338-EAG13.

su escrito, destacó que: (1) la anotación de rebeldía procedía toda vez que los demandados nunca comparecieron al procedimiento; (2) que desde el momento en que se solicitó la continuación de los procedimientos y el momento en que el tribunal le anotó la rebeldía a los demandados habían transcurrido aproximadamente siete meses; (3) que el encontrarse en rebeldía es una de las excepciones al requisito de tener que celebrarse una vista de mediación compulsoria, y (4) que no enmendó su reclamación para incluir a la sucesión del señor Pagán Acosta, pues desconocía del fallecimiento de este ya que de la Certificación Registral obtenida y sometida no surgía declaratoria de herederos del causante y la señora Ramos Miranda tampoco notificó ese acontecimiento al tribunal.

Evaluadas las posturas expuestas, el 23 de agosto de 2023 el Tribunal de Primera Instancia emitió una *Resolución*, notificada al día siguiente, mediante la cual proveyó No Ha Lugar a la solicitud de relevo de sentencia que instó la señora Ramos Miranda. De igual forma, el 24 de agosto de 2024, el foro primario notificó otro dictamen y denegó la solicitud de paralización de lanzamiento de la compareciente.

Inconforme, el 22 de septiembre de 2023 la señora Ramos Miranda acudió ante el Tribunal de Apelaciones mediante un recurso de *certiorari* e impugnó la decisión del Tribunal de Primera Instancia de no conceder su solicitud

de relevo de sentencia (Caso Núm. KLCE202301051). Oportunamente, Oriental se opuso a la expedición del auto.

El 24 de octubre de 2023, el foro apelativo intermedio emitió una *Resolución*, notificada al día siguiente, por medio de la cual expresó que no ejercería su facultad discrecional para expedir el auto de *certiorari* presentado. En resumen, consignó que del trámite procesal se desprendía que **los demandados no comparecieron ante el foro primario a presentar alegación responsiva alguna, a pesar de haber sido emplazados personalmente.** Por ende, concluyó que estos no podían hacer uso ahora de la moción de relevo de sentencia, **pues es conocido que este mecanismo no puede servir de llave maestra para que las partes reabran —de manera caprichosa— un pleito que ya fue adjudicado por el tribunal.**

El 9 de noviembre de 2023, la señora Ramos Miranda solicitó que el Tribunal de Apelaciones reconsiderara su dictamen. Sin embargo, el foro intermedio denegó su petición mediante *Resolución* emitida y notificada el 27 de noviembre de 2023.

Todavía en desacuerdo, el 27 de diciembre de 2023, la señora Ramos Miranda compareció ante nos mediante un recurso de *certiorari*. En su petición, alegó que el foro apelativo intermedio erró al concluir que no se configuraron ninguno de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, para atender su escrito. Asimismo, expuso que el foro

intermedio había incidido al denegar expedir su petición y no revertir la decisión del Tribunal de Primera Instancia de declarar No Ha Lugar la solicitud de relevo de sentencia, aun cuando el dictamen emitido en este caso: (1) es nulo por haber sido dictado en ausencia de parte indispensable y en contravención a la protección constitucional que impide que una persona sea privada de su libertad o propiedad sin un debido proceso de ley; y (2) fue dictado sin jurisdicción, pues no se dio cumplimiento al requisito de referir el caso a un proceso de mediación compulsoria, según requerido por la Ley 184-2012, *supra*.

Expedido el auto de *certiorari* en reconsideración, la señora Ramos Miranda presentó su alegato. Por su parte, Oriental compareció y se opuso al recurso. En síntesis, alegó que la petición de relevo de sentencia fue interpuesta por la señora Ramos Miranda de manera tardía y que lo anterior, unido a la incuria desplegada por esta durante el pleito, conllevan que no se justifique que el tribunal intervenga en etapa postsentencia. Añadió que, aun de atenderse los méritos la petición en controversia, los argumentos esbozados en la misma son inmeritorios, por lo que no se debe variar la *Sentencia* final y firme emitida por el foro primario el 9 de agosto de 2022 y los procedimientos celebrados posteriormente.

Desglosados los acontecimientos fácticos pertinentes, procedo a exponer los fundamentos de mi disenso.

## II

### A. Rebeldía

La rebeldía se ha definido como "la posición procesal en que se coloca la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir con su deber procesal". *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011) (citando a R. Hernández Colón, Derecho Procesal Civil, 5ta ed., San Juan, Ed. Lexisnexis, 2010, Sec. 2701, pág. 287). La anotación de rebeldía procede "[c]uando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en [las Reglas de Procedimiento Civil]". Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V. Una vez el tribunal dicta sentencia en rebeldía, puede dejarla sin efecto si se satisface alguna de las instancias dispuestas en la Regla 49.2 de Procedimiento Civil, *supra*. Regla 45.3 de Procedimiento Civil, *supra*.

### B. Relevo de Sentencia

La Regla 49.2 de Procedimiento Civil, *supra*, provee para que una parte le solicite al tribunal que le releve de los efectos de una sentencia por alguna de las razones siguientes:

> (a) Error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48 de este apéndice;

(c) fraude (incluso el que hasta ahora se ha denominado 'intrínseco' y el también llamado 'extrínseco'), falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

El propósito de esta regla es lograr un balance justo entre dos intereses conflictivos en nuestro ordenamiento jurídico. Por un lado, el principio de que todo caso se resuelva de manera justa y, por el otro, el interés de que los litigios lleguen a su fin. *HRS Erase v. CMT*, 205 DPR 689, 698 (2020); *García Colón et al. v. Sucn. González*, 178 DPR 527, 540 (2010).

Ciertamente, se ha dicho que la Regla 49.2 debe interpretarse de forma liberal, resolviendo cualquier duda a favor de la parte que solicita que se deje sin efecto la sentencia. *HRS Erase v. CMT*, *supra*, pág. 698; *Díaz v. Tribunal Superior*, 93 DPR 79, 87 (1966). Sin embargo, también se ha enfatizado que este remedio "no es [una] llave maestra para reabrir a capricho el pleito ya adjudicado y echar a un lado la sentencia correctamente dictada". *Ríos v. Tribunal Superior*, 102 DPR 793, 794 (1974). Tampoco puede ser utilizado en sustitución de los recursos de apelación o reconsideración. *García Colón et al. v. Sucn. González*, *supra*, pág. 541.

Para que el relevo de sentencia proceda al amparo de la Regla 49.2 de Procedimiento Civil, *supra*, es necesario que la parte solicitante aduzca, al menos, una de las razones enumeradas en esa regla. Dicho de otra forma, el solicitante está obligado a justificar su solicitud amparándose en una de las causales establecidas en la regla citada. *García Colón et al. v. Sucn. González*, *supra*, pág. 540; *Reyes v. E.L.A. et al.*, 155 DPR 799, 809 (2001).

El relevar a una parte de los efectos de una sentencia es una decisión discrecional, excepto en los casos de nulidad o cuando la sentencia ha sido satisfecha. *García Colón et al. v. Sucn. González*, *supra*, pág. 540; R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 4803, pág. 454. Ahora bien, cabe destacar que la causal de nulidad tiene que ser demostrada y el tribunal debe tener certeza de su procedencia. *HRS Erase v. CMT*, *supra*, págs. 698-699. *López García v. López García*, 200 DPR 50, 61-22 (2018).

Además, **transcurridos los seis (6) meses que dispone la Regla 49.2 de Procedimiento Civil para presentar una moción de relevo de sentencia, la parte que alega nulidad debe recurrir a un pleito independiente para impugnar el dictamen.** *Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 DPR 237 (1996). C. Zeno Santiago, *Sumario procedimiento civil puertorriqueño*, 1ra ed., San Juan, Ed. Situm, 2023, pág. 237.

### C. Sustitución de Parte

Por otra parte, la Regla 22.1 de Procedimiento Civil, *supra*, rige todo lo concerniente a la sustitución de parte por razón de muerte. En lo pertinente, esta establece que:

(a) […]

**(b) Si una parte fallece y la reclamación no queda por ello extinguida, <u>cualquiera de las partes en el procedimiento o sus abogados o abogadas notificarán el fallecimiento al tribunal y a las otras partes</u> dentro del término de treinta (30) días, contados desde la fecha en que se conozca tal hecho. El tribunal, a solicitud hecha dentro de los noventa (90) días siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas.** Los(Las) causahabientes o representantes podrán presentar la solicitud de sustitución del(de la) finado(a), y dicha solicitud se notificará a las partes en la forma dispuesta en la Regla 67 de este apéndice y a las que no lo sean en la forma que dispone la Regla 4 de este apéndice. La demanda se enmendará a los únicos fines de conformar la sustitución e incorporar las nuevas partes al pleito. **Transcurrido el término sin haberse solicitado la sustitución, se dictará sentencia desestimando el pleito, sin perjuicio.**

(c) […] (Negrilla y subrayado suplido).

De acuerdo con la disposición anterior, una vez muere una parte en el proceso judicial surgen dos obligaciones principales. Primero, la parte que conoce del fallecimiento —o sus representantes legales— deben informarle **al tribunal <u>y a las otras partes</u>** el suceso dentro del plazo de treinta (30) días. Segundo, debe solicitarse la sustitución de la parte fallecida para que el tribunal ordene su sustitución dentro de los noventa (90) días posteriores a haberse notificado el acontecimiento. Incumplido este

último deber, el tribunal tiene que desestimar el pleito sin perjuicio. Ahora bien, nótese que la regla requiere que la muerte sea notificada por la parte que tiene conocimiento. Esto pues, solo de esa forma es que el tribunal está en posición de ordenar la sustitución o desestimar el caso. **Ante el desconocimiento, resulta imposible que el foro judicial cumpla con su deber o que otra parte en el pleito satisfaga el mandato de la Regla 22.1 de Procedimiento Civil,** *supra*.

## III

En la *Sentencia* emitida, este Tribunal adjudica que **"una vez <u>Oriental</u> advino en conocimiento del fallecimiento del señor Pagán Acosta era su deber procurar la correspondiente sustitución de parte para incluir como tales a los herederos del referido causante que hubiesen aceptado el llamado a heredar"**. (Negrilla y subrayado suplido).[6] Al no haberlo hecho, este Foro colige que "la *Sentencia* dictada por el Tribunal de Primera Instancia en el presente caso es nula por ausencia de parte indispensable".[7] El problema con esta conclusión reside en que: **<u>el fallecimiento del señor Pagan Acosta era un asunto desconocido tanto por Oriental como por el tribunal</u>. Dado al estado de rebeldía en que se encontraba el matrimonio Pagán-Ramos, ese suceso no fue descubierto hasta el momento en que la señora Ramos Miranda lo anunció en su** *Moción Asumiendo Representación Legal y Solicitando Paralización*

---

[6] *Sentencia*, pág. 19.
[7] Íd.

***de Lanzamiento*, casi un (1) año después de que el foro primario dispuso de la *Demanda*.**

Previo a ese instante, la señora Ramos Miranda no llevó a cabo ninguna gestión para poner en conocimiento a Oriental ni al tribunal del deceso del señor Pagán Acosta, según debía hacerlo al amparo de la Regla 22.1 de Procedimiento Civil, *supra*. Esto, aun cuando la misma fue notificada del proceso judicial instado en su contra y de la *Sentencia* final emitida por el foro primario. No obstante, ahora pretende utilizar esa circunstancia como fundamento para lograr que se decrete la nulidad del dictamen aquí impugnado. En otras palabras, habiendo incumplido con su deber como parte en el caso, la peticionaria intenta sacar ventaja de su omisión para lograr dejar sin efecto una *Sentencia* que ya es final y firme.

No puedo consentir a que esto se permita. Como es sabido, el principio de derecho que ordena proceder de buena fe en la vida jurídica impide que una parte se beneficie al actuar en contra de sus propios actos. Esto pues, "[l]a conducta contradictoria no tiene lugar en el campo del Derecho y debe ser impedida". *Carabarín et al. v. A.R.P.E.*, 132 DPR 938, 959 (1993).

La determinación que hoy se emite deja en desprovisto a la única parte que actuó de manera proactiva y diligente durante este caso. En ese aspecto, debe tenerse en cuenta que fue Oriental quien solicitó al Tribunal de Primera

Instancia la paralización de los procedimientos cuando el matrimonio Pagán-Ramos se acogió al procedimiento de quiebras. Además, fue este quien también notificó al foro primario cuando dicho proceso culminó.

Por último, debo destacar que la peticionaria incumplió igualmente con presentar un pleito independiente para solicitar el relevo de sentencia por razón de nulidad, según es requerido en nuestro ordenamiento cuando transcurre el término de seis (6) meses que dispone la Regla 49.2 de Procedimiento Civil, *supra*.

En vista de todo lo anterior, considero que los fundamentos consignados por la señora Ramos Miranda en su *Solicitud de Relevo de Sentencia* no pueden ser utilizados como punta de lanza para alcanzar la nulidad de la *Sentencia* dictada por el Tribunal de Primera Instancia el 9 de agosto de 2022. Por lo cual, hubiese confirmado los dictámenes emitidos por los foros inferiores. Sin embargo, siendo la decisión de la Mayoría una distinta, **disiento**.


                              Mildred G. Pabón Charneco
                              Jueza Asociada