Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **EDGAR ANTONIO RODRÍGUEZ OCASIO Y SOC. LEGAL DE GANANCIALES Y OTROS**<br><br>Parte Apelante<br><br>v.<br><br>**BENITO SOTO RODRÍGUEZ Y SOC. LEGAL DE GANANCIALES Y OTROS**<br><br>Parte Apelada | KLAN202500309 | ***APELACIÓN*** procedente del Tribunal de Primera Instancia Sala Superior de **Caguas**<br><br>Caso Número: **GY2021CV00248**<br><br>Sobre:<br><br>**ACCIÓN REINVINDICATORIA Y OTROS** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de mayo de 2025.

Comparece ante nos, Edgar Antonio Rodríguez Ocasio, Carmen Ana Ortiz Rodríguez y la Sociedad Legal de Bienes Gananciales compuesta por ambos, en adelante y en conjunto Rodríguez Ocasio o apelantes, mediante el recurso de epígrafe, y nos solicitan la revocación de la "*Sentencia*" notificada por el Tribunal de Primera Instancia, Sala Superior de Caguas, en adelante TPI-Caguas, el 5 de febrero de 2025. En el referido dictamen, el Foro Recurrido declaró "*Ha Lugar*" una moción de desestimación por falta de parte indispensable.

Por los fundamentos que expondremos a continuación, se *revoca* la "*Sentencia*" apelada y se *devuelve* al TPI-Caguas.

**I.**

El 8 de julio de 2021 los apelantes presentaron una demanda, sobre *Acción Reivindicatoria y Daños y Perjuicios*, contra Benito Soto Rodríguez, Paulita Ortíz Rodríguez, la Sociedad Legal de Bienes

Número Identificador

SEN2025 _____

Gananciales compuesta por ambos y Yadiris Figueroa Torres, en adelante apelados.[1] En el pliego, esbozó que adquirió de los apelados, mediante la Escritura Núm. 15 de Segregación y Compraventa, el 14 de junio de 2017, ante el abogado notario Jaime Aponte Malavé, una finca descrita de la siguiente manera:

> RÚSTICA: Predio de terreno del Barrio Toíta, con una cabida superficial de OCHOCIENTOS DOCE PUNTO TRES MIL (812.3000) METROS CUADRADOS equivalentes a CERO PUNTO DOSCIENTOS SEIS (0.260) *[sic]* CUERDA, radicado en el Barrio Toíta del término municipal de Cayey, Puerto Rico. En lindes por el Norte con calle Municipal y el solar número uno (1) a segregarse; por el Sur con Cornelio Rodríguez; por el Este con remanente de la finca principal de la cual se segrega; y por el Oeste con calle Municipal.[2]

En su escrito, los apelantes explicaron que construyeron en este predio su hogar, un inmueble en cemento y bloques. Manifestaron que, para el mes de enero del año 2020, el hijo del apelado les entregó un plano que reflejó una diferencia en las medidas del terreno que habían obtenido originalmente. Por ello, Rodríguez Ocasio contrató a un ingeniero, quien, utilizando un sistema satelital, determinó preliminarmente que los apelados habían construido en la propiedad de los apelantes. Por lo cual, los apelantes le notificaron su intención de hacer un deslinde a los colindantes, entre estos los apelados, quienes posteriormente fueron citados para llevar a cabo una mensura por el agrimensor, licenciado Gilberto Rosario Rolón. Esta nueva medida reflejó que los linderos de la propiedad de los apelados invadieron la de los apelantes.[3]

Por tal razón, Rodríguez Ocasio alegó que los apelados construyeron parte de una casa, un muro, un pozo séptico y una

---

[1] Apéndice del recurso, pág. 1.
[2] *Id.*, pág. 2.
[3] El 20 de septiembre de 2021 el Tribunal de Primera Instancia, Sala Municipal de Cayey, declaró *"No Ha Lugar"* una causa de acción presentada por los apelantes bajo la Ley Núm. 284 de 21 de agosto de 1999, 33 LPRA sec. 4013 *et seq.*, en el Caso Núm. LA2020-0507.

verja dentro del terreno correspondiente al apelante.[4] Asimismo, señaló que los apelados colocaron una toma de luz, de tal forma que *el cable del tendido eléctrico atravesaba por encima del terreno de los apelantes*.[5] En consecuencia, le solicitó al TPI-Caguas que ordenara la demolición de lo construido dentro su predio, al igual que cinco mil dólares ($5,000.00) por gastos legales, las costas del proceso, y una cantidad no menor de cincuenta mil dólares ($50,000.00) por daños y perjuicios.[6]

Posteriormente, el 20 de septiembre de 2021, los apelados presentaron una "*Contestación a Demanda y Reconvención*".[7] En síntesis, negaron haber construido en la propiedad de Rodríguez Ocasio. En cuanto a la reconvención solicitada, alegaron la presencia de un acecho constante e intimidación por parte de los apelantes.[8] Por esta razón, le solicitó al TPI-Caguas que concediera no menos de cien mil dólares ($100,000.00) por concepto de angustias mentales a los apelados, al igual que no menos de cien mil dólares ($100,000.00) por concepto de honorarios de abogados.[9]

El 16 de agosto de 2022, los apelantes presentaron una *"Moción para Informar, sobre Parte Indispensable, Solicitud de Enmienda a la Demanda y Solicitud para que se expidan Emplazamientos".*[10] Mediante la misma, solicitó que se incluyera como parte indispensable al hijo menor de edad de la codemandada Yadiris Figueroa Torres, ya que de la Escritura Núm. 20 sobre Segregación y Donación, otorgada el 11 de mayo de 2018 por el abogado notario Jaime Aponte Malavé, surgía que el inmueble les fue donado a ambos por Benito Soto Rodríguez y Paulita Ortiz

---

[4] Apéndice del recurso, pág. 3.
[5] *Id.*
[6] *Id.*, pág. 4.
[7] *Id.*, pág. 5.
[8] *Id.*, pág. 3.
[9] *Id.*, pág. 4.
[10] *Id.*, pág. 17.

Rodríguez. La petición fue declarada *"Con Lugar"* por el TPI-Caguas el 24 de agosto de 2022.[11]

Posteriormente, el 9 de noviembre de 2022, los apelados presentaron una *"Demanda contra Tercero"* contra el Ingeniero William D. Rodríguez Rodríguez, quien fue el encargado de los permisos, la segregación y de los planos alegadamente defectuosos que dan origen a la presente causa de acción.[12] La misma fue autorizada por el TPI-Caguas el 28 de noviembre de 2022.[13] Así pues, el 10 de febrero de 2023, este presentó su *"Contestación a Demanda contra Tercero"*.[14]

Así las cosas, el 7 de noviembre de 2024, se celebró una vista, en la cual comparecieron todas las partes.[15] En la misma, entre otras cosas, el Foro Primario exhortó a las partes a lograr a un acuerdo, pues de lo contrario, desestimaría el pleito por falta de parte indispensable. En adición, el TPI-Caguas expresó que "[n]o se permitiría a un caso del año 2021 enmendar la demanda".[16] Por último, el Foro Primario señaló la vista sobre *Conferencia con Antelación a Juicio*.

Luego, el 12 de diciembre de 2024, el apelado presentó una *"Moción Solicitando Desestimación"*.[17] En su escrito, planteó que los apelantes omitieron incluir como parte indispensable a la Autoridad de Energía Eléctrica, actualmente LUMA Energy Service, en adelante, LUMA, quienes tenían una servidumbre inscrita en el Registro de la Propiedad que gravaba el predio que los apelantes querían recuperar. De igual forma, señaló que en ese terreno estaban instalados los equipos eléctricos que le proveían servicios a

---

[11] Apéndice del recurso, pág. 21.
[12] *Id.*, pág. 33.
[13] *Id.*, pág. 35.
[14] SUMAC, Entrada Núm. 61.
[15] SUMAC, Entrada Núm. 88.
[16] *Id.*, pág. 3.
[17] Apéndice del recurso, págs. 36-38.

todos los solares envueltos en la controversia.[18] Por lo cual, adujo que el remedio solicitado por los apelantes en su demanda afectaba esta servidumbre. Arguyó que, ante la falta de una parte indispensable y haber transcurrido el término para estos ser emplazados, procedía la desestimación del pleito.[19] Así también, con la referida moción, incluyó una *"Certificación de Propiedad Inmueble"*, en adelante Certificación, la cual reflejó *la existencia de una servidumbre inscrita a favor de la Autoridad de Energía Eléctrica.*[20]

En desacuerdo, el 21 de diciembre de 2024, los apelantes presentaron una *"Moción en Oposición a Moción de Desestimación"*.[21] En su escrito, Rodríguez Ocasio planteó que sus alegaciones en la demanda no estaban relacionadas a la servidumbre eléctrica que poseía LUMA, sino que, estas iban dirigidas a la toma de luz construida por los apelados. No obstante, alegó que, de entender que LUMA era parte indispensable, los apelados renunciaron a esta defensa al no levantarla en su contestación a la demanda. En adición, arguyó que, al incluir la Certificación, la moción presentada por el apelado se convirtió en una moción de sentencia sumaria, la cual a su vez no cumplía con los requisitos de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36.4. De igual forma, señaló que, conforme al caso *Rivera, Lozada v. Universal*, 2024 TSPR 99, 214 DPR __ (2024), no procedía la disposición del caso mediante una desestimación.

Por su parte, el 27 de diciembre de 2024, el tercero demandado presentó una *"Moción solicitando se tome Conocimiento Judicial"*.[22] Mediante la misma, señaló haber levantado la defensa

---

[18] Apéndice del recurso, págs. 36-37.
[19] *Id.*, pág. 37.
[20] *Id.*, pág. 39.
[21] *Id.*, págs. 45-51.
[22] *Id.*, págs. 43-44.

de falta de parte indispensable, al contestar la demanda en su contra.

Así las cosas, el 5 de febrero de 2025, el TPI-Caguas notificó una *"Sentencia"*.[23] En su dictamen, el Foro Primario reconoció que los planos de inscripción tenían errores que privaban a los apelantes de una parte del terreno que les pertenecía, y que, tanto los apelados como el tercero demandado, habían intentado subsanarlo. No obstante, el TPI-Caguas destacó que, en efecto, existía una servidumbre a favor de la antigua Autoridad de Energía Eléctrica, ahora LUMA, que gravaba el predio en controversia y donde se ubicaba una toma de luz.

Así, el Foro Primario determinó que, con respecto al argumento de que la toma de luz no estaba relacionada a LUMA, los apelantes no incluyeron evidencia alguna que sustentara sus planteamientos y refutaran las alegaciones de la parte demandada debidamente evidenciadas.[24] Así también, el TPI-Caguas señaló que, los apelantes debieron haber sabido que el caso no se podía disponer sin la comparecencia de LUMA. Esbozó que, a pesar de que el apelante no solicitó la enmienda, "pretender enmendar la demanda luego de 3 años y medio de litigio y habiendo culminado el descubrimiento de prueba, [era] algo completamente irrazonable".[25] De igual manera, resaltó que la defensa sobre falta de parte indispensable era irrenunciable, por lo que podía ser traída en cualquier parte del pleito. Por ello, el TPI-Caguas desestimó sin perjuicio el pleito por falta de parte indispensable.[26]

Inconforme, el 17 de febrero de 2025, los apelantes presentaron una *"Moción de Reconsideración",* mediante la cual reiteraron sus argumentos previos oponiéndose a la

---

[23] Apéndice del recurso, págs. 52-55.
[24] *Id.*, pág. 55.
[25] *Id.*
[26] *Id.*

desestimación.[27] Por otro lado, el tercero demandado compareció mediante moción el 27 de febrero de 2025, en la cual arguyó, entre otras cosas, que un cambio de cabida o reubicación tendría un efecto en la descripción de la servidumbre inscrita a favor de LUMA.[28]. Igualmente, el 10 de marzo de 2025, los apelados comparecieron mediante *"Moción en Cumplimiento de Orden"*, y, en resumen, alegaron que el hecho de que no se hubiesen hecho alegaciones sobre la servidumbre en la demanda, no eximía al apelante de tener que incluir a LUMA como parte en el pleito, pues estos tenían un derecho inscrito a su favor.[29] Así, el 13 de marzo de 2025, el TPI-Caguas declaró *"No Ha Lugar"* a la *"Moción de Reconsideración"* de los apelantes.[30]

Aún en desacuerdo, el 11 de abril de 2025, Rodríguez Ocasio acudió ante este Foro Apelativo y señala la comisión de los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TPI Y ABUSÓ DE SUS DISCRECIÓN AL DECLARAR CON LUGAR LA MOCIÓN DE DESESTIMACIÓN DE LA PARTE RECURRIDA Y RAZONAR QUE LUMA ES PARTE INDISPENSABLE EN EL PLEITO CUANDO NO SURGE DE LAS ALEGACIONES DE LA DEMANDADA QUE SE VERÍAN AFECTADOS LOS DERECHOS DE LUMA O QUE NO SE PUEDA DICTAR SENTENCIA SIN QUE LUMA ESTÉ PRESENTE EN EL PLEITO.
>
> **SEGUNDO ERROR:** ERRÓ EL TPI Y ABUSÓ DE SUS DISCRECIÓN AL NO INTERPRETAR LAS ALEGACIONES DE LA DEMANDA DE LA MANERA MÁS FAVORABLE A LA PARTE RECURRENTE SEGÚN LA DOCTRINA RATIFICADA RECIENTEMENTE POR NUESTRO TRIBUNAL SUPREMO EN ABRAHAM RIVERA CANDELA Y ALEXANDRA LOZADA V. UNIVERSAL INSURANCE COMPANY 2024 TSPR 99 214 DPR ___.

---

[27] Apéndice del recurso, págs. 56-63.
[28] *Id.*, págs. 71-73.
[29] *Id.*, págs. 79-81.
[30] *Id.*, pág. 82.

**TERCER ERROR:** ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL ACOGER PRUEBA DOCUMENTAL AJENA A LAS ALEGACIONES DE LA DEMANDADA Y RESOLVER EL CASO DE MANERA SUMARIA CUANDO HABÍA CONTROVERSIAS DE HECHOS.

**CUARTO ERROR:** ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL DESESTIMAR LA DEMANDA AL AMPARO DE UNA CERTIFICACIÓN REGISTRAL QUE ALUDE A UNA SERVIDUMBRE CUYO PLANO (EL PRESENTADO EN EL REGISTRO DE LA PROPIEDAD) NO SE PRESENTÓ.

El 28 de abril de 2025, emitimos una "*Resolución*", mediante la cual se les concedió un término a las otras partes para presentar su posición en cuanto al recurso. Por tanto, el tercero demandado, el 9 de mayo de 2025, y los apelados, el 14 de mayo de 2025, comparecieron, cada uno mediante una "*Moción Informativa*", indicando estar conformes con la determinación del TPI-Caguas y remitiéndose a sus escritos presentados durante el procedimiento ante el Foro Primario.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro

apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *Freire Ruiz et als v. Morales, Hernández,* 2024 TSPR 129, 214 DPR __ (2024); *González Pagán v. SLG Moret-Brunet,* 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles,* 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell,* 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007).

**B. Parte Indispensable**

La Regla 16 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, regula lo relacionado a la acumulación de partes. En específico,

dispone que "[l]as personas que tengan un interés común *sin cuya presencia no pueda adjudicarse la controversia*, se harán partes y se acumularán como demandantes o demandadas, según corresponda". (Énfasis suplido). *Inmob. Baleares et al. v. Benabe et al.*, 2024 TSPR 112, 214 DPR __ (2024); *Pérez Ríos et al. v. CPE*, 213 DPR 203, 213 (2023); *FCPR v. ELA et al.,* 211 DPR 521, 530 (2023).

Una parte es indispensable cuando la controversia no puede adjudicarse sin su presencia *ya que sus derechos se verían afectados*. *Inmob. Baleares et al. v. Benabe et al.,* supra; *FCPR v. ELA et al.,* supra, págs. 530-531; *Rivera Marrero v. Santiago Martínez,* 203 DPR 462, 463 (2019); *López García v. López García,* 200 DPR 50, 63 (2018). La misma alude a una parte cuyo interés en la causa de acción es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos. *Pérez Ríos v. et al. v. CPE*, supra, pág. 213; *López García v. López García,* 200 DPR 50, 64 (2018); *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014); *García Colón et al. v. Sucn. González*, 178 DPR 527, 548 (2010).

El alcance de la Regla 16.1, supra, forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley y la necesidad de que el dictamen judicial que en su día se emita sea uno completo. *Pérez Ríos et al. v. CPE,* supra; *RPR & BJJ Ex Parte,* 207 DPR 389, 407 (2021); *López García v. López García*, supra, pág. 63. Es por esto, que, ante la ausencia de una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia. *Romero v. S.L.G. Reyes*, 164 DPR 721, 733 (2005).

Por otro lado, el Tribunal Supremo de Puerto Rico ha expresado que, a la hora de determinar si la presencia de una parte

es indispensable para adjudicar una controversia, se debe analizar "si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente". *Inmob. Baleares v. Benabe et al.*, supra; *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 677 (2012). Cabe precisar que la falta de parte indispensable es un planteamiento tan vital, que se puede presentar en cualquier momento, incluyendo presentarlo por primera vez en apelación, o que el mismo se plantee *motu proprio* por el tribunal. *Oriental Bank v. Pagán Acosta y otros,* 2024 TSPR 133, 215 DPR __ (2024); *Pérez Ríos v. CPE,* supra, pág. 213; *RPR & BJJ Ex Parte,* supra, pág. 407.

### C. Moción de Desestimación

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite que una parte demandada en un pleito solicite la desestimación de la demanda presentada en su contra. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025); *Díaz Vázquez et al v. Colón Peña et al.,* 2024 TSPR 113, 214 DPR __ (2024); *Eagle Sec. Police Inc. v. Dorado,* 211 DPR 70, 83 (2023); *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213, 235 (2016); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). Esta, dispone que una parte demandada presentará una moción fundamentada en: (1) la falta de jurisdicción sobre la materia; (2) la falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio y*; (6) dejar de acumular una parte indispensable.* 32 LPRA Ap. V, R. 10.2. (Énfasis nuestro). Ver, además: *BPPR v. Cable Media,* supra; *Díaz Vázquez et al. v. Colón Peña et al.*, supra; *Inmob. Baleares et al. v. Benabe et al.*, supra; *Rivera Lozada v. Universal,* 2024 TSPR 99, 214 DPR __ (2024); *Blassino, Reyes v. Reyes Blassino et al.*, 2024 TSPR 93, 214 DPR __ (2024).

Para que proceda una moción al amparo de la Regla 10.2, supra, el Foro Primario deberá tomar como ciertos todos los hechos alegados en la demanda y considerarlos de la manera más favorables a la parte demandante. *Díaz Vázquez et al. v. Colón Peña et al.*, supra; *Rivera Lozada v. Universal*, supra; *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523, 533 (2024); *Eagle Sec. Police, Inc. v. Dorado*, supra, pág. 78; *Bonnelly Sagrado et al. v. United Surety*, 207 DPR 715, 722 (2021); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013); *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013). Es decir, al momento de evaluar una moción de desestimación, los tribunales deberán examinar los hechos alegados en la demanda de forma conjunta y de la forma más liberal posible a favor de la parte demandante. *Morales et al. v. Asoc. Propietarios*, 2024 TSPR 61, 214 DPR __ (2024); *Cruz Pérez v. Roldán Rodríguez et. al.*, 206 DPR 261, 267 (2021); *López García v. López García*, 200 DPR 50, 69 (2018); *Dorante v. Wrangler de PR*, 145 DPR 408, 438 (1998). Bajo esta premisa, para que una moción de desestimación prospere, se tendrá que demostrar de forma certera que el demandante no tiene derecho a remedio alguno, que pudiere probar en apoyo a su reclamación. *López García v. López García*, supra, pág. 70; *Dorante v. Wrangler of P.R.,* supra, pág. 414.

Ahora bien, la Regla 10.2, supra, también dispone que, si en la moción de desestimación presentada, la parte plantea materias que no se incluyeron en la demanda, la misma se considerará como una solicitud de sentencia sumaria. En este caso, la moción estará sujeta a los trámites provistos en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V. R. 36. No obstante, esta disposición será de aplicación, cuando la moción de desestimación se presente bajo el fundamento de que se *deja de exponer una reclamación que justifique la concesión de un remedio.*

Por otro lado, se ha establecido que una sentencia se considera nula, cuando se dicta sin incluir a una parte indispensable. *Oriental Bank v. Pagán Acosta y otros,* supra; *Pérez Ríos v. CPE,* supra, pág. 214; *García Colón et al. v. Sucn. González,* supra, 550. No obstante, nuestro ordenamiento jurídico promueve el principio de la economía procesal, garantizando una solución justa, rápida y económica de los procedimientos. 32 LPRA Ap. V. R.1. Es por ello que, al ser la *desestimación* uno de los remedios más drásticos que puede imponer el tribunal, se debe recurrir a esta en casos extremos. *Sánchez Rodríguez v. Adm. de Corrección,* 177 DPR 714, 721 (2009). De este modo, una demanda no debe desestimarse cuando es susceptible de ser enmendada. *Colón v. Lotería,* 167 DPR 625, 649 (2006).

Al momento de permitir una enmienda, se debe analizar en conjunto (1) el tiempo transcurrido, (2) la razón para la demora, (3) el perjuicio a la otra parte y (4) la procedencia de la enmienda. *León Torres v. Rivera Lebrón,* 204 DPR 20, 36 (2020); *Menéndez, Velázquez v. Rodríguez et al.,* 203 DPR 885, 932 (2020); *S.L.G. Font Bardón v. Mini-Warehouse,* 179 D.P.R. 322, 334 (2010) *S.L.G. Sierra v. Rodríguez,* 163 DPR 738, 748 (2005). Por lo cual, nuestro Tribunal Supremo ha expresado que el paso del tiempo no es por sí solo un factor determinante para negar una enmienda. *S.L.G. Font Bardón v. Mini-Warehouse,* supra, pág. 335. "Los tribunales deben conceder el permiso para enmendar la demanda liberalmente, aún en etapas avanzadas de los procedimientos". *Id.* Incluso, se ha avalado enmendar una demanda cuando el caso se encuentra en etapas tan avanzadas como la *Conferencia con Antelación al Juicio. Id.*

Así, mientras exista la posibilidad de enmendar la demanda e incluir a la parte inicialmente omitida, "no procederá la desestimación, sino que se concederá la oportunidad de incluir a

dicha parte en el proceso". *Cirino González v. Adm. Corrección*, 190 DPR 14, 47 (2014).

### D. Ley de Servidumbres Legales de Servicio Público

A grandes rasgos, las servidumbres son gravámenes impuestos sobre bienes inmuebles en beneficio de otro bien, perteneciente a un dueño distinto. Artículo 935 del Código Civil de 2020, en adelante Código Civil 2020, 31 LPRA sec. 8501. Nuestro ordenamiento jurídico reconoce una pluralidad de servidumbres, que gozan de naturalezas distintas y son constituidas de diversas formas. Así, pues, "el derecho de servidumbre se puede definir como un derecho subjetivo, de carácter real y perpetuo, que concede un poder para obtener un goce o utilidad de un fundo en beneficio de otro fundo ajeno". *Ciudad Real v. Mun. Vega Baja*, 161 DPR 160, 171 (2014).

Ahora bien, las servidumbres pueden ser legales, es decir, constituirse por virtud de Ley. Artículo 944, Código Civil 2020, supra, sec. 8521. Éstas se refieren a aquellas "cuyo título de constitución es la ley y, por lo tanto, el dueño del predio destinado a sufrirlas no puede impedir su nacimiento". *Ciudad Real v. Mun. Vega Baja*, supra, pág. 172. En lo concerniente al caso de epígrafe, las servidumbres establecidas de paso para energía eléctrica se rigen por las leyes y reglamentos especiales que las autorizan. Artículo 954 del Código Civil 2020, supra, sec. 8541.

Para ello, el legislador aprobó la Ley Núm. 143 de 20 de julio de 1979, Ley de Servidumbres Legales de Servicio Público, en adelante, Ley Núm. 143, 27 LPRA sec. 2151 *et seq.* Este cuerpo normativo fue creado con la intención de establecer que ciertas servidumbres, entre ellas, las de servicio público de paso de energía eléctrica, "tienen carácter de servidumbres legales, continuas y aparentes". 27 LPRA sec. 2151.

En atención al caso de marras, las servidumbres de paso de energía eléctrica, con carácter legal, pueden ser adquiridas por cualquier medio legal de adquisición, "en virtud de documento privado o escritura pública, o por prescripción adquisitiva de veinte (20) años o por expropiación forzosa". Sección 2, Ley Núm. 143, supra, sec. 2152. La mencionada sección dispone, además, que a estas servidumbres le será aplicable la normativa general de servidumbres continuas y aparentes del Código Civil de Puerto Rico, supra.

Por otro lado, la Ley Núm. 143 reconoce qué otros tipos de servidumbres legales pueden ser inscritas en el Registro de la Propiedad, sin la necesidad de constituirlas en un documento público o privado "en los casos de proyectos de construcción de edificios, de urbanizaciones, de lotificaciones simples o cualesquiera otros proyectos de construcción e instalación de facilidades para servicios públicos en que por la finca principal o los solares discurran o se requiera instalar dichos servicios". Sección 4, Ley Núm. 143, supra, sec. 2154. Para ello, bastará con la presentación en el Registro de la Propiedad una Certificación, "mediante la cual se acredite la constitución de cada una de las servidumbres". *Id.* Así también, deberá presentarse lo siguiente:

> Se acompañará con las antedichas Certificaciones, el plano que demuestre gráficamente la trayectoria y extensión de la servidumbre constituida, y donde consten las fincas registradas afectadas endosado o aprobado por la agencia gubernamental o municipio adquirente del derecho de servidumbre, y el documento privado autenticado ante notario, mediante el cual el titular del predio sirviente cede el derecho de servidumbre a favor de la entidad pública o municipio en cuestión, conforme a dicho [plano] y el consentimiento prestado posteriormente por el adquirente del derecho a dicho traspaso. El documento privado que acompañará a la certificación que se presentará al Registro de la Propiedad hará referencia al [plano] que describa gráficamente la servidumbre así constituida.

27 LPRA sec. 2154.

Además, la Ley 143, supra, ordena que las entidades públicas por las cuales se establecen las servidumbres legales promulguen "los reglamentos que regirán el uso y disfrute de dichas servidumbres de conformidad con las necesidades particulares de cada servicio". Sección 3, Ley Núm. 143, supra, sec. 2153. A estos fines, se creó el Reglamento de Servidumbres para la Autoridad de Energía Eléctrica, Reglamento Núm. 7282 del 25 de enero de 2007, en adelante, Reglamento Núm. 7282. El mismo, en el Artículo A de la Sección I, dispone que las servidumbres de energía eléctrica permiten cumplir con los fines y propósitos para los cuales fue creada la antigua Autoridad de Energía Eléctrica. Entre estos, se encuentra proveer energía eléctrica de forma confiable para fomentar el bienestar general y el desarrollo sostenible del país. *"Ley de la Autoridad de Energía Eléctrica de Puerto Rico",* Ley Núm. 83 de 2 de mayo de 1941, 22 LPRA sec. 196.

Con relación a lo que nos ocupa, el Reglamento Núm. 7282 dispone en el Artículo D de la Sección V, supra, que para poder modificar la servidumbre que le pertenece a la Autoridad de Energía Eléctrica, esta otorgará permisos escritos condicionados, utilizando su discreción y garantizando la continuidad del servicio. De igual forma, en el Artículo D de la Sección VI del referido reglamento, supra, establece que toda persona que construya, instale o ubique cualquier estructura en estas servidumbres sin autorización de la Autoridad de Energía Eléctrica, incurrirá en un delito menos grave.

**III.**

Por estar relacionados entre sí discutiremos los primeros *dos (2) errores* en conjunto. En el caso de marras, los apelantes alegan que el TPI-Caguas se equivocó al desestimar la demanda y considerar que LUMA era parte indispensable. Plantean que el Foro

Primario erró al no interpretar sus alegaciones de la manera más favorable hacia los apelantes. *No le asiste la razón.*

Surge del expediente ante nos, que el Foro Primario tuvo ante sí una Certificación que reflejó la existencia de una servidumbre a favor de la antigua Autoridad de Energía Eléctrica, ahora LUMA, la cual gravaba el predio de los apelantes y, por ende, el área donde se ubica la toma de luz en controversia. Por ello, el TPI-Caguas consideró que LUMA era una parte indispensable en el procedimiento.

Conforme a la normativa esbozada, es parte indispensable aquella, sin cuya presencia se puede adjudicar la causa de acción y cuyos derechos se podrían ver afectados por la determinación que haga el Tribunal. En el caso de epígrafe, la parte solicita la demolición de una toma de luz, conectada a los servicios de energía eléctrica que brinda LUMA y ubicada dentro de la servidumbre inscrita a favor de este. Por lo tanto, la servidumbre perteneciente a LUMA pudiera verse afectada por la decisión que en su día emita el Foro Apelado. En virtud de lo cual entendemos que el Foro Primario no erró al interpretar que LUMA es una parte indispensable en el pleito, sin cuya presencia puede disponerse del caso.

No empece a lo anterior, el principio de la economía procesal que permea en nuestro ordenamiento jurídico exhorta a que se utilice la desestimación como remedio en casos extremos. Por lo cual, una demanda no debe desestimarse cuando es susceptible a ser enmendada, independientemente del tiempo transcurrido desde su presentación.

En el caso ante nos, el TPI-Caguas expresó en su dictamen que, a pesar de haber reconocido que la demanda del apelante contenía hechos que justificaban la concesión de un remedio, no permitiría la enmienda para poder incluir a la aludida parte indispensable por haber transcurrido aproximadamente tres (3)

años desde que se presentó la causa de acción. No obstante, nuestro Máximo Foro ha explicado que el paso del tiempo no es un factor de por sí determinante para denegar la enmienda.

De lo reseñado en la vista del 7 de noviembre de 2024, y de la "*Sentencia*" apelada, es nuestra apreciación que el Foro Primario se rehusó a considerar la posibilidad de enmendar la demanda. Por ende, pese a que el TPI-Caguas actuó correctamente al determinar que LUMA era parte indispensable en el pleito, el mismo debió permitir que se enmendara la demanda original e incluir a dicha parte.

Por otro lado, en su *tercer señalamiento de error*, los apelantes alegan que el TPI-Caguas erró al desestimar de manera sumaria el caso ante nos con prueba documental ajena a las alegaciones. *No le asiste la razón.* En su recurso, los apelantes hacen referencia a la Regla 10.2 de Procedimiento Civil, supra, en apoyo de su argumento. No obstante, la aludida Regla dispone que una moción de desestimación *bajo el fundamento de dejar de exponer una reclamación que justifique la concesión de un remedio* será considerada como una solicitud de sentencia sumaria cuando se expongan materias no contenidas en la alegación impugnada. En el caso de marras, el Foro Primario desestimó *bajo el fundamento* de *dejar de acumular una parte indispensable.* Por lo cual, la mencionada normativa no es de aplicación, y, por consiguiente, el TPI-Caguas no estaba obligado a considerar dicha moción como una de sentencia sumaria.

Por último, los apelantes plantean como un *cuarto señalamiento de error* que el TPI-Caguas se equivocó al desestimar la demanda basándose en una Certificación que alude a un plano que no fue presentado. En apoyo de su reclamo, los apelantes aluden a la Ley Núm. 143, supra.

Según esbozado anteriormente, la Sección 4 de la Ley Núm. 143, supra, dispone que, para *inscribir* una servidumbre legal en el Registro de la Propiedad, deberá acompañarse la petición con un plano que muestre la trayectoria y extensión de la misma. Es decir que la Ley Núm. 143, supra, se limita a explicar los documentos que serán necesarios para la inscripción de las servidumbres en el Registro de la Propiedad. No obstante, la misma no condiciona la validez de la Certificación ante un Tribunal a la presentación de los planos archivados en el Registro de la Propiedad. Por tal razón, el TPI-Caguas no erró al tomar su determinación luego de evaluar la Certificación presentada por el apelado.

Por todo lo cual, evaluado el recurso ante nos y en vías de fomentar el principio de la economía procesal, *revocamos la "Sentencia" apelada, y se devuelve al Foro Primario* para los efectos de que se permita enmendar la demanda para incluir a LUMA y continuar con los procedimientos.

**IV.**

Por los fundamentos antes expuestos, *se revoca la "Sentencia" apelada, y se devuelve para permitir la enmienda y continuar con los procedimientos.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones