Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| ORIENTAL BANK<br><br>Recurrida<br><br>v.<br><br>VÍCTOR T. ARREAGA MORALES t/c/c VÍCTOR TOMÁS ARREAGA MORALES<br><br>Peticionario | TA2026CE00074 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.:<br>BY2024CV05065<br><br>Sobre:<br>Cobro de Dinero – Ordinario, Ejecución de Hipoteca: Propiedad Residencial |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente.

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de febrero de 2026.

Comparece ante nos el Sr. Víctor Tomás Arreaga Morales (en adelante, señor Arreaga Morales o peticionario) y nos solicita que revoquemos la *Orden*, emitida el 2 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] En el aludido dictamen, el TPI denegó conceder la solicitud de relevo de sentencia presentada por el peticionario.

Por los fundamentos que exponemos a continuación, denegamos expedir el auto de *certiorari* solicitado.

-I-

El presente caso tiene su génesis el 30 de agosto de 2024, cuando Oriental Bank (en adelante, Oriental o recurrida) interpuso una *Demanda* sobre cobro de dinero y ejecución de hipoteca en contra del peticionario.[2] En esencia, sostuvo que, el 29 de diciembre de 2007, el señor Arreaga

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TPI, Entrada Núm. 58. Notificada el 4 de diciembre de 2025.
[2] *Íd.*, Entrada Núm. 1.

Morales otorgó un pagaré a favor de RG Premier Bank of Puerto Rico, por la suma de $116,800.00 y para cuya garantía se constituyó una hipoteca voluntaria sobre un inmueble propiedad del peticionario. Asimismo, esgrimió que advino con el derecho a la acreencia y que, desde el 1 de marzo de 2024, el señor Arreaga Morales incurrió en incumplimiento de sus obligaciones prestatarias, de modo que adeudaba la suma de $82,488.33 por concepto de principal e intereses. Así pues, arguyó que la deuda se encontraba vencida, por lo cual interpuso la referida acción judicial.

El 5 de septiembre de 2024, la Secretaría del TPI expidió el emplazamiento dirigido al peticionario.[3] Sin embargo, el 3 de octubre de 2024, la recurrida presentó una *Moción Solicitando Autorización para Emplazar por Edictos*.[4] Allí, planteó que, aun cuando realizó las diligencias pertinentes exigidas, no localizó al peticionario por lo que solicitó la anuencia del foro de instancia para emplazar al señor Arreaga Morales mediante edicto. Junto con su moción, Oriental acompañó, en lo pertinente, una declaración jurada suscrita el 2 de octubre de 2024, por el Sr. Fernando Marcano Maldonado (en adelante, señor Marcano Maldonado), emplazador de oficio. En lo aquí atinente, el señor Marcano Maldonado constó en su declaración jurada lo siguiente:

5. Que el día 17 de septiembre de 2023 a las 2:26 pm me personé en la propiedad objeto de ejecución en **E-13 Calle 3, Urb. Lagos de Plata, Toa Baja, P.R. 00949.**

6. Que al llamar se acercó a hablar con una dama la cual estaba detrás de una ventana con una cortina y se identificó como la madre del demandado **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales**.

7. Que al preguntarle por el demandado **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales** esta dijo que se encontraba trabajando y que no sabía a qué hora llegaría, por lo que dejé una nota con mi teléfono pillada en la puerta. Aclaro que no puedo describir a dicha dama ya que estaba detrás de una ventana con cortina como ya explicado.

---

[3] SUMAC TPI, Entrada Núm. 2.
[4] *Íd.*, Entrada Núm. 4.

8. Que dicha propiedad era de un piso, blanca y salmón claro, puertas frontal y ventanas de cristal y metal, marquesina con portón automática de cristal y metal, buzón de metal frente a la propiedad, localizada en las coordenadas Lat. 18.44668 / Lon. -66.18796 en sistema de GPS.

9. Que el día 18 de septiembre de 2023 a las 11:08 am llamé a los teléfonos proporcionados por la parte demandante 787-810-8128 en donde contestó el demandado **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales** quien al explicarle el motivo de la llamada me dijo que se encontraba trabajando y no sabía a la hora que llegaría, que me llamaría otro día.

10. Que también llamé al 787-365-0007 el que resultó fuera de servicio.

11. Que el día 23 de septiembre de 2023 a las 6:55 pm regresé a la propiedad objeto de ejecución en donde nadie contestó. También llamé al teléfono 787-810-8128 el que no fue contestado.

12. Que el día 24 de septiembre de 2024 a las 5:23 pm llamé nuevamente al teléfono 787-810-8128 en donde contestó el demandado **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales** quien me dijo que se encontraba trabajando y que no sabía a qué hora llegaría. También le pregunté cuando podría entregarle el emplazamiento y me dijo que no sabía y que él me llamaría.

13. Que el día 28 de septiembre de 2024 a las 11:17 am regresé a la propiedad objeto de ejecución en donde al llamar contestó la madre del demandado.

14. Que al igual que la vez anterior (párrafo 6) está [sic] a través de una ventana con una cortina me dijo que el demandado **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales** no se encontraba y que ella no sabía a qué hora llegaría. También llamé al teléfono 787-810-8128 del demandado **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales** el que no fue contestado.

15. Que el día 30 de septiembre de 2024 realicé gestiones en relación al epígrafe;

16. Que a la 1:17 pm realicé gestiones en la Casa Alcaldía de Toa Baja en donde la Sra. Ramos dijo no tener información en cuanto a la parte demandada **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales**.

17. Que a la 1:45 pm realicé gestiones en el Cuartel Municipal de Toa Baja (Levittown) en donde el Agente Vázquez dijo no tener información en cuanto a la parte demandada **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales**.

18. Que ese mismo día a las 6:25 pm llamé nuevamente al teléfono 787-810-8128 en donde contestó el demandado **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales** quien al preguntarle como podía hacer para entregarle el emplazamiento me dijo que no sabría decirme; que él me llamaba y cort[ó] la llamada.

19. Que se realizó una búsqueda en las redes cibernéticas en cuanto a la parte demandada **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales** y a pesar de haber coincidencia ninguna conduce a información adicional.

20. Se aclara que no se realizaron gestiones [en] el Servicio Postal debido que sus empleados no están autorizados a ofrecer información.

21. Se aclara que de la información proporcionada por la parte demandante no surgen más direcciones, lugares de trabajo o teléfonos adicionales.

22. Que debido a que la parte demandada **Víctor T. Arreaga Morales t/c/c Víctor Tomás Arreaga Morales** no fue localizada concluyo mis gestiones y suscribo la presente declaración jurada.[5]

El 3 de octubre de 2024, el TPI autorizó la antedicha solicitud de emplazamiento por edicto.[6] Posteriormente, el 10 de diciembre de 2024, la recurrida presentó una *Moción Reiterando Solicitud de Referido a Mediación*.[7] Allí, expuso que, en vista de que, por información y creencia, el inmueble objeto del litigio constituía la residencia principal del peticionario, nuestro ordenamiento jurídico mandataba la celebración de una vista de mediación compulsoria entre el acreedor y el deudor hipotecario ante un mediador.[8] En ese sentido, solicitó que el foro *a quo* refiriera el caso a una mediación.

Según fue solicitado, ese mismo día, el foro de instancia emitió y notificó una *Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de Hipotecas*, y señaló la vista de mediación para el 5 de febrero de 2025. Consta en el expediente judicial que la orden le fue notificada al señor Arreaga Morales a la siguiente dirección: PO Box 52025, Toa Baja, PR 00950-2025; la misma dirección postal que se informó en el proyecto de emplazamiento. [9] Así pues, el 7 de febrero de 2025, el Centro de Mediación de Conflictos presentó una *Moción de Resultado* en la que informó que daba

---

[5] SUMAC TPI, Entrada Núm. 4, Anejos, *Declaraci[ó]n Jurada*, págs. 1-2 (énfasis en el original).

[6] *Íd.*, Entrada Núm. 6. Notificada el 7 de octubre de 2024.

[7] *Íd.,* Entrada Núm. 7.

[8] *Véase* la Ley Núm. 184 de 17 de agosto de 2012, según enmendada, mejor conocida como la *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, 32 LPRA sec. 2881 *et seq.*

[9] SUMAC TPI, Entrada Núm. 8.

por terminada su intervención en el caso toda vez que el señor Arreaga Morales no compareció a la vista de mediación, **a pesar de haber sido notificado de la citación en su dirección postal**.[10] Sobre lo anterior, el 10 de febrero de 2025, el TPI emitió una *Orden* en la que dio por cumplido el trámite de mediación compulsoria.[11]

Así las cosas, el 18 de febrero de 2025, Oriental instó una *Moción en Solicitud de Anotación de Rebeldía por Falta de Comparecencia y en Solicitud de Sentencia en Rebeldía*.[12] En esencia, resaltó haber notificado al peticionario con copia de la *Demanda* y el emplazamiento por edicto publicado a su última dirección conocida y que, a pesar de ello, éste no compareció dentro del término establecido. Consecuentemente, solicitó se le anotara la rebeldía y, además, que el TPI emitiera sentencia. Junto con la referida moción, la recurrida acompañó una copia del emplazamiento por edicto publicado y la declaración jurada de la representante autorizada del periódico en el que se publicó.

El 24 de febrero de 2025, el foro de instancia emitió y notificó una *Sentencia en Rebeldía* a favor de Oriental, mediante la cual condenó al señor Arreaga Morales al pago de la suma principal e intereses adeudados y, en la eventualidad de que no cumpliera con ello, dispuso que ordenaría la ejecución de la hipoteca y la venta del inmueble en pública subasta.[13] Cabe destacar que el dictamen del TPI, según surge del expediente, fue notificado por edicto y a la dirección postal conocida del peticionario.[14] Ulteriormente, el 7 de marzo de 2025, el señor Arreaga Morales compareció, por conducto de su abogado, a través de una *Moción Asumiendo Representación Legal*.[15]

---

[10] SUMAC TPI, Entrada Núm. 10.
[11] *Íd.*, Entrada Núm. 11.
[12] *Íd.*, Entrada Núm. 12.
[13] *Íd.*, Entrada Núm. 13.
[14] *Íd.*, Entradas Núm. 14 y 15.
[15] *Íd.*, Entrada Núm. 17.

Así las cosas, el 31 de marzo de 2025, Oriental presentó una *Moción Solicitando Ejecución de Sentencia*.[16] Sostuvo que la sentencia emitida en el caso de autos advino final y firme sin que la deuda haya sido satisfecha, por lo que solicitó la ejecución de la hipoteca y la venta en pública subasta del inmueble gravado. Ante ello, ese mismo día, el foro de instancia emitió una *Orden de Ejecución de Sentencia y Venta de Bienes*,[17] así como un *Mandamiento de Ejecuci[ó]n*.[18]

Unos días más tarde, específicamente el 3 de abril de 2025, el peticionario instó una *Solicitud de Orden para Referido a Mediación* en la cual indicó haber sido emplazado por edicto y solicitó al TPI que refiriera el caso a mediación nuevamente.[19] En respuesta a lo anterior, el 7 de abril de 2025, Oriental presentó una *Moción en Cumplimiento de Orden* en la cual anunció no tener reparo con que se refiriera el caso a un segundo proceso de mediación.[20] Siendo así, el 8 de abril de 2025, el foro *a quo* emitió y notificó una *Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de Hipotecas*, y señaló la vista de mediación para el 16 de abril de 2025.[21]

El 9 de junio de 2025, el Centro de Mediación de Conflictos presentó una *Moción en Solicitud de Remedio*.[22] En esta, informó que la vista de mediación se señaló para varias fechas y que, al comparecer a la última de estas, el peticionario lo hizo sin haber completado la entrega de documentos necesaria para la evaluación financiera. En ese sentido, solicitó al foro de instancia que ordenara la entrega completa de los referidos documentos por parte del señor Arreaga Morales dentro de un término adicional, so pena de que se diera por culminado el proceso de mediación.

---

[16] SUMAC TPI, Entrada Núm. 19.
[17] *Íd.*, Entrada Núm. 20. Notificada el 1 de abril de 2025.
[18] *Íd.*, Entrada Núm. 21. Expedido el 1 de abril de 2025.
[19] *Íd.*, Entrada Núm. 22.
[20] *Íd.*, Entrada Núm. 24.
[21] *Íd.*, Entrada Núm. 27.
[22] *Íd.*, Entrada Núm. 28.

El 12 de junio de 2025, el foro *a quo* emitió una *Orden* mediante la que dispuso un término final de quince (15) días para que el peticionario entregara los documentos o daría por terminados los procesos de mediación.[23] Así las cosas, el 30 de junio de 2025, el Centro de Mediación de Conflictos notificó al tribunal que daba por concluida su intervención toda vez que el señor Arreaga Morales compareció a la vista de mediación, celebrada ese mismo día, **sin la documentación necesaria**.[24] Ante lo informado, el 1 de julio de 2025, el TPI ordenó la continuación de los procedimientos judiciales.[25]

Según surge del expediente, la subasta pública del inmueble objeto del litigio, se celebró y se adjudicó.[26] A esos efectos, el 29 de agosto de 2025, el foro *a quo* emitió una *Orden de Confirmación de Adjudicación o Venta Judicial*.[27] Así las cosas, el 17 de septiembre de 2025, emitió una *Orden* para el lanzamiento del inmueble,[28] así como un *Mandamiento de Lanzamiento*.[29]

Posteriormente, el 12 de noviembre de 2025, el peticionario interpuso, por derecho propio, una *Moción Informativa y Petición de Orden*, mediante la que solicitó un término de dos (2) a tres (3) semanas para desalojar el inmueble con el fin de poder reubicar un adulto mayor y de que se le permitiera la remoción de unas placas solares que estaba prevista para el 21 de noviembre de 2025.[30] El 12 de noviembre de 2025, el TPI le concedió al señor Arreaga Morales hasta el 30 de noviembre de 2025, para culminar las gestiones pendientes que informó.[31]

---

[23] SUMAC TPI, Entrada Núm. 29. Notificada el 16 de junio de 2025.
[24] *Íd.*, Entrada Núm. 30.
[25] *Íd.*, Entrada Núm. 31.
[26] *Íd.*, Entrada Núm. 34.
[27] *Íd.*, Entrada Núm. 36. Notificada el 2 de septiembre de 2025.
[28] *Íd.*, Entrada Núm. 44. Notificada el 19 de septiembre de 2025.
[29] *Íd.*, Entrada Núm. 45. Expedido el 19 de septiembre de 2025.
[30] *Íd.*, Entrada Núm. 47.
[31] SUMAC TPI, Entrada Núm. 48.

Luego de varios trámites procesales, el 18 de noviembre de 2025, el peticionario, mediante nueva representación legal,[32] interpuso una *Urgente Solicitud de Relevo de Sentencia y de Desestimación de la Demanda, por No Haberse Emplazado a la Parte Demandada Conforme a Derecho, Dentro del Término Provisto por las Reglas de Procedimiento Civil*.[33] En síntesis, sostuvo que Oriental incumplió con los requisitos para solicitar el emplazamiento por edicto del señor Arreaga Morales. De igual forma, que el foro de instancia incumplió con su deber ministerial de evaluar, previo a autorizar el emplazamiento por edicto, que la dirección del peticionario conocida por la recurrida pertenecía o perteneció a éste, toda vez que los documentos que fueron remitidos a la misma habían sido devueltos por el servicio postal. Consecuentemente, arguyó que, tras haberse expirado el término establecido para diligenciar el emplazamiento, el foro *a quo* nunca adquirió jurisdicción sobre la persona del señor Arreaga Morales, por lo que los procedimientos judiciales y el dictamen emitido eran nulos.

También, en igual fecha, el peticionario presentó una *Moción Urgente Solicitando Paralización de los Procedimientos Post Sentencia en el Tribunal de Primera Instancia*.[34] En respuesta, el 24 de noviembre de 2025, Oriental incoó una *Oposición a Urgente Moción en Solicitud de Relevo de Sentencia y Oposición a Paralización*.[35] En esencia, resaltó que, en su *Solicitud de Orden para Referido a Mediación*,[36] el propio señor Arreaga Morales indicó que fue emplazado por edicto. Además, que el tracto procesal del caso demostraba el cumplimiento del debido proceso de ley, pues obraban en el expediente las acreditaciones de las notificaciones por correo certificado a la dirección postal y a la de la propiedad inmueble.

---

[32] Cabe destacar que la representación legal mediante la cual el señor Arreaga Morales compareció a los procesos de mediación, presentó su renuncia el 12 de noviembre de 2025, y, el 17 de noviembre de 2025, el TPI notificó su autorización al relevo de representación legal solicitado. *Véase* SUMAC TPI, Entradas Núm. 50 y 51.

[33] SUMAC TPI, Entrada Núm. 52.

[34] *Íd*., Entrada Núm. 53.

[35] *Íd*., Entrada Núm. 56.

[36] SUMAC TPI, Entrada Núm. 22.

De igual forma, sostuvo que, de haber sido insuficiente el emplazamiento por edicto, el peticionario se sometió voluntariamente a la jurisdicción del TPI. Además, la recurrida certificó que las direcciones que tenía del peticionario eran las que éste le proveyó y que, a su mejor entendimiento, eran sus direcciones actuales toda vez que no había recibido ninguna notificación de cambio de dirección de parte del señor Arreaga Morales.

El 25 de noviembre de 2025, el peticionario instó una *Réplica a Oposición [a] Urgente Solicitud de Relevo de Sentencia* en la que reiteró los planteamientos que esbozó sobre su solicitud.[37] Trabado el asunto, el 2 de diciembre de 2025, el TPI declaró No Ha Lugar la solicitud de relevo de sentencia y ordenó la continuación de los procedimientos.[38] Inconforme, el 16 de diciembre de 2025, el señor Arreaga Morales presentó una *Solicitud de Reconsideración* y recalcó haber demostrado la nulidad de los procedimientos y la sentencia emitida en su contra.[39] Ante ello, el 19 de diciembre de 2025, el foro *a quo* emitió una *Resolución Interlocutoria* en la que denegó el petitorio de reconsideración.[40]

Aun inconforme, el 20 de enero de 2026, el peticionario recurrió ante nos e interpuso una *Petición de Certiorari*.[41] En esta, le imputó al TPI la comisión del siguiente error:

> A-Erró el Tribunal *a quo* al declarar No Ha Lugar la solicitud de relevo de sentencia y de desestimación radicada el 18 de diciembre de 2025 y la petición de reconsideración presentada el 16 de diciembre de 2025, haciendo abstracción del resto del Derecho, y en clara violación a los principios más básicos del debido proceso de ley que le asiste a la demandada en un procedimiento judicial y al no ordenar desestimar la demanda presentada en este caso.

Junto con su recurso, el señor Arreaga Morales presentó una *Solicitud de Autorización para Exceder el Número de Páginas Reglamentarias*,[42] la cual

---

[37] *Íd.*, Entrada Núm. 57.
[38] *Íd.*, Entrada Núm. 58. Notificada el 4 de diciembre de 2025.
[39] *Íd.*, Entrada Núm. 59.
[40] *Íd.*, Entrada Núm. 60. Notificada el 23 de diciembre de 2025.
[41] SUMAC TA, Entrada Núm. 1.
[42] *Íd.*, Entrada Núm. 2.

concedimos mediante *Resolución* emitida el 21 de enero de 2026.[43] Por su parte, el 30 de enero de 2026, Oriental compareció mediante una *Oposición a que se Expida Certiorari*.[44]

Siendo así, con el beneficio de la comparecencia de ambas partes y del expediente ante nos, procedemos a disponer del presente asunto, no sin antes delimitar el marco jurídico aplicable.

-II-

El vehículo procesal de *certiorari* le permite a un tribunal de mayor jerarquía revisar las órdenes o resoluciones interlocutorias emitidas por un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 195 (2023), al mencionar a *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021). La característica distintiva del recurso de *certiorari* descansa en la discreción encomendada al Tribunal de Apelaciones para autorizar su expedición y adjudicar en sus méritos. *Íd.* De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016), al mencionar a *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.*

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición del auto de *certiorari* se encuentran en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *Rivera et al. v. Arcos Dorados et al.*, *supra*, págs. 207-208. Sobre ello, la referida regla dispone, en lo pertinente, como sigue:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositiva. No obstante, y

---

[43] *Íd.*, Entrada Núm. 3. Notificada el 22 de enero de 2026.
[44] *Íd.*, Entrada Núm. 4.

por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Como se aprecia, la antedicha regla no contempla los dictámenes posteriores a la sentencia, por lo que, al determinar si procede la expedición de un auto de *certiorari*, el Tribunal de Apelaciones viene obligado a acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025). *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012). Ello por cuanto limitar la revisión de dictámenes post sentencia a las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra*, tales determinaciones quedarían sin posibilidad alguna de revisión apelativa. *BPPR v. SLG Gomez-López*, *supra*. En adición, el examen para determinar si procede expedir un auto de *certiorari* no se da en el vacío o en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 824 (2023).

A esos efectos, la Regla 40 de nuestro Reglamento, *supra*, dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto de la orden de mostrar causa evita un fracaso de la justicia.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio, como tampoco constituye un listado exhaustivo. *García v. Padró*, 165 DPR 324, 327 (2005).

De otra parte, estos factores pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

*B.*

Como regla general, en nuestro ordenamiento jurídico toda sentencia dictada por un tribunal de justicia goza de la presunción de ser válida y correcta. *Oriental Bank v. Pagán Acosta*, 2024 TSPR 133, 215 DPR ____ y casos allí citados. Sin embargo, existe circunstancias particulares en las que una parte puede solicitar el relevo de los efectos de una sentencia previamente dictada en su contra. *Íd.*, al citar a *Lopez García v. López García*, 200 DPR 50, 59 (2018).

A tales efectos, la Regla 49 de Procedimiento Civil, *supra,* dispone lo siguiente:

Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:

(a) error, inadvertencia, sorpresa o negligencia excusable;
(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
(d) nulidad de la sentencia;
(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Las disposiciones de esta regla no aplicarán a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d). La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. **Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos.** Esta regla no limita el poder del tribunal para:

(1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal.

Mientras esté pendiente una apelación o un recurso de certiorari de una resolución final en procedimiento de jurisdicción voluntaria, el tribunal apelado no podrá conceder ningún remedio bajo esta regla, a menos que sea con el permiso del tribunal de apelación. Una vez que el tribunal de apelación dicte sentencia, no podrá concederse ningún remedio bajo esta regla que sea incompatible con el mandato, a menos que se obtenga previamente permiso para ello del tribunal de apelación. En ambos casos, la moción de relevo deberá siempre presentarse ante el tribunal apelado dentro del término antes señalado, y si éste determina que estaría dispuesto a conceder el remedio, se acudirá entonces ante el tribunal de apelación para solicitar el referido permiso.

Del lenguaje de la transcrita regla se desprende que una solicitud de relevo de sentencia deberá presentarse dentro de un término razonable, más nunca cuando han transcurrido seis (6) meses. No obstante, si el fundamento para solicitar el relevo de la sentencia se basa en la nulidad de esta, tal plazo es inaplicable y el tribunal vendrá obligado a relevarla. Véase, *Oriental Bank v. Pagán Acosta*, *supra*; *HRS Erase v. CMT*, 205 DPR 689, 699 (2020). Por consiguiente, ante una sentencia dictada sin jurisdicción sobre la persona o sobre la materia, o cuando se trata de un dictamen que ha quebrantado el debido proceso de ley de una parte, como lo sería una sentencia dictada sin acumularse una parte indispensable, los tribunales están obligados a relevarla, ya sea a solicitud de parte o a instancia propia.[45]

A pesar de que la Regla 49.2 de Procedimiento Civil, *supra*, debe interpretarse liberalmente, nuestro Tribunal Supremo ha advertido que esta no constituye una "llave maestra" para reabrir controversias y no debe ser

---

[45] *Oriental Bank v. Pagán Acosta*, *supra*, al citar a *López García v. López García*, *supra*; Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, San Juan, Lexis Nexis, págs. 456-457, Sec. 4807; *Rivera Torres v. Díaz López*, 207 DPR 636, 657 (2021).

utilizada en sustitución de un recurso de revisión o una moción de reconsideración. *Vázquez v. López*, 160 DPR 714, 726 (2003) al citar a *Pagán v. Alcalde Mun. de Cataño*, 143 DPR 314, 328 (1997); *Olmeda Nazario v. Sueiro Jiménez*, 123 DPR 294, 299 (1989). La determinación de conceder el relevo de una sentencia está confiada a la discreción del Tribunal de Primera Instancia. *Garriga Gordils v. Maldonado Colón*, 109 DPR 817, 822 (1980); *Fine Art Wallpaper v. Wolff*, 102 DPR 451, 458 (1974).

Por otro lado, el Tribunal Supremo de Puerto Rico ha señalado que la moción de relevo de sentencia no está disponible para corregir errores de derecho, ni errores de apreciación o valoración de la prueba. Estos son fundamentos para la reconsideración o la apelación del dictamen, pero no para el relevo. *García Colón et al. v. Sucn. González*, 178 DPR 527, 542-543 (2010).

Expuesta la normativa jurídica aplicable, procedemos a disponer del presente recurso.

-III-

Ciertamente, la controversia de autos es revisable mediante el auto discrecional del *certiorari* por tratarse de la revisión judicial de una determinación interlocutoria dictada post sentencia.[46] A través de su recurso, el peticionario arguye que, tanto los procedimientos judiciales como la sentencia emitida en el caso de autos, son radicalmente nulos toda vez que no procedía la autorización a un emplazamiento por edicto y el foro *a quo* no adquirió jurisdicción sobre su persona.

Específicamente, al citar a *Rivera v. Jaume,* 157 DPR 562 (2002), señala que habiéndose recibido devuelta por correo aquella correspondencia que se envió con copia de la demanda y del emplazamiento por edicto, el foro primario debió evaluar qué consecuencias tiene, si alguna, el hecho de que, autorizado y realizado un emplazamiento por edicto, la correspondencia

---

[46] *Banco Popular de Puerto Rico v. Gomez Ayalón*, 213 DPR 314 (2023).

que contenía los documentos relativos al mismo fuera devuelta por el servicio postal. Así, expone que el expediente judicial no refleja que el TPI hubiese inquirido sobre cómo la demandante Oriental Bank conocía la referida dirección. Es más, al referirse a la decisión tomada por el Tribunal Supremo en el caso *Lanzo Llanos v. Banco de la Vivienda*, 133 DPR 507 (1993) argumenta que es indiscutible que no fue emplazado conforme a derecho, pues sin justificación alguna, la parte recurrida no citó a su señora madre para inquirir de ésta, mediante deposición al efecto, sobre su paradero.

Hemos evaluado los argumentos del peticionario. También, hemos repasado la jurisprudencia que cita en apoyo a sus argumentos; particularmente, las circunstancias particulares de los casos citados. Tras un análisis concienzudo y sosegado de los asuntos planteados, así como del expediente, no encontramos presente ninguno de los criterios establecidos por la Regla 40 de nuestro Reglamento para expedir el auto discrecional de *certiorari*. Contrario a lo argüido por el apelante, no hallamos que, en su determinación, el TPI haya actuado con prejuicio o parcialidad, ni que incurriera en un craso abuso de discreción. Tampoco nos parece que se equivocara en la interpretación o aplicación de cualquier norma jurídica procesal o sustantiva por lo que se justifique nuestra intervención.

-IV-

Por todo lo antes consignado, denegamos expedir el auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones